**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMARA SHANAHAN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ETHAN ALLEN RETAIL, INC., KATE** | : | **NO. 21-595** |
| **SAVINO, and ROBERT KALINA** | : | |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                   September 8, 2021

Defendant Ethan Allen Retail, Inc. terminated plaintiff Tamara Shanahan's employment in January 2020 after she had taken medical leave following foot surgery. Shanahan then brought this employment discrimination case claiming that Ethan Allen's decision to terminate her rather than allowing her to return to work was motivated by her age, her disability following surgery and her taking medical leave. She also claims the defendants retaliated against her for complaining of age discrimination and harassment.

Moving to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), defendant Robert Kalina, Ethan Allen's compensation and benefits manager working out of Connecticut, contends that he does not have sufficient contacts with the Commonwealth of Pennsylvania and has not purposefully directed any conduct at Pennsylvania. Shanahan counters that Kalina, who is responsible for overseeing employees in Pennsylvania where she worked for Ethan Allen, specifically directed his discriminatory activities towards this forum.

We conclude we can exercise personal jurisdiction over Kalina because his actions were directed at Pennsylvania and the focal point of the harm caused by his actions was Pennsylvania where Shanahan worked. Therefore, we shall deny his motion to dismiss.

Shanahan is 62 years old and worked as a design consultant for Ethan Allen from 2008 until January 2020.[1] She initially worked for Ethan Allen in Oklahoma City before transferring to its Chadds Ford, Pennsylvania store in 2014.[2] She lives across the state line in Wilmington, Delaware.[3]

Heeding her physician's advice, Shanahan underwent surgery on July 5, 2019 and took post-operative medical leave.[4] She had hoped to return to work on September 26, 2019.[5] However, on September 18, 2019, her physician directed that she remain out through November 11, 2019.[6] Accordingly, Shanahan requested an extension of her medical leave through November 11.[7]

By letter dated October 7, 2019, Kalina informed Shanahan that her job protection under the FMLA ended on September 27, 2019, and that Ethan Allen would no longer hold her position open.[8] He stated that she was welcome to apply for available positions once she was cleared to return to work.[9]

---

[1] Am. Compl. at ¶¶ 9, 26, 32, 151 (ECF No. 17).

[2] *Id.* at ¶¶ 31, 36.

[3] *Id.* at ¶ 9.

[4] *Id.* at ¶¶ 29, 37–41.

[5] *Id.* at ¶ 42.

[6] *Id.* at ¶ 43.

[7] *Id.* at ¶ 44.

[8] *Id.* at ¶ 47; Decl. of Robert Kalina in Supp. of Def.'s Mot. to Dism. at ¶ 3 (ECF No. 22).

[9] Am. Compl. at ¶ 48.

In response, Shanahan asked her physician for permission to return to work sooner.[10] He released her to return on November 1, 2019, with certain accommodations.[11]

Ethan Allen resisted her attempt to return to work in November, claiming that they were entitled to replace her because her FMLA protection had ended.[12] Ethan Allen eventually agreed to her returning, but with a limited version of the requested accommodations.[13] Upon her return, Ethan Allen presented her with two agreements that changed her working hours, added new duties and responsibilities that included heavy physical labor, made her personally responsible for customers' failure to pay, increased her sales quotas, provided her accommodations only through December 1, 2019 and took other actions to intimidate her into leaving her job.[14] When Shanahan objected to the new terms of her employment, she was told she had to sign on the spot.[15] Feeling that she had no choice, she signed the agreements.[16]

Shanahan raised concerns about the agreements and Ethan Allen's discriminatory, harassing and retaliatory actions several times with her supervisor.[17] After her first few requests were ignored, Shanahan met with her supervisor and Kate Savino,

---

[10] *Id.* at ¶ 52.

[11] *Id.* at ¶ 53.

[12] *Id.* at ¶¶ 54–58.

[13] *Id.* at ¶ 59.

[14] *Id.* at ¶¶ 60–72, 76–80, 88, 94–96, 98, 100–103, 108–109.

[15] *Id.* at ¶¶ 71, 92–93.

[16] *Id.* at ¶¶ 72, 94, 108–109.

[17] *Id.* at ¶¶ 73, 105–107.

Ethan Allen's former managing director, on November 7, 2019.[18] She did not receive any meaningful explanation for Ethan Allen's actions.[19] She was told only that it was "company policy," they "will work with [her]," and they would "evaluate" the situation at the end of the month.[20] They also suggested that she go back on leave if she thought the work was too hard for her.[21]

Shanahan experienced significant pain in her foot after her early return to work.[22] Her physician recommended she go on medical leave again until he re-evaluated her condition in January 2020.[23] Shanahan informed Savino that she was taking medical leave until January 8, 2020.[24] Ethan Allen responded by informing her that her position would not be held open.[25]

On January 2, 2020, despite having advised Savino that she was planning to return to work on January 8, Shanahan received an email informing her that her position had been filled and that her benefits would cease after January 18, 2020.[26] On January 7, 2020, Shanahan's physician cleared her to return to work.[27] She immediately emailed

---

[18] *Id.* at ¶¶ 18, 73, 113, 115.

[19] *Id.* at ¶ 116.

[20] *Id.* at ¶¶ 116–129.

[21] *Id.* at ¶¶ 132, 135.

[22] *Id.* at ¶ 136.

[23] *Id.* at ¶¶ 136–137.

[24] *Id.* at ¶ 138.

[25] *Id.* at ¶ 139.

[26] *Id.* at ¶¶ 141–142.

[27] *Id.* at ¶ 144.

Kalina, attaching her doctor's note.[28] Kalina responded that she could not return because she had not been cleared.[29] She was later notified by another human resources employee that her employment had been terminated as of January 8, 2020.[30]

Although she continued to dispute Ethan Allen's actions, Shanahan asked Kalina how to apply for an open position.[31] On January 8, 2020, Kalina emailed her, thanking her for acknowledging that Ethan Allen was not holding her job open and providing a link to view job postings.[32]

Shanahan later learned that her replacement was a former poor performer at Ethan Allen, who was younger and not disabled.[33] She eventually stopped appearing for work and quit.[34]

Shanahan brought this action against Ethan Allen, Savino, and Kalina for discrimination under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act ("PHRA"). Kalina has moved to dismiss for lack of personal jurisdiction. He claims that he is a Connecticut resident and had limited contact

---

[28] *Id.* In her January 7, 2020 email, Shanahan wrote: "As planned I will be returning to work on January 8. As you know from previous emails, I had advised Kate on November 21st, and Bob Kalina on December 9th, that I would be able to return on this date." Def.'s Mot. to Dism. Ex. 2 at 2.

[29] Am. Compl. at ¶ 144.

[30] *Id.* at ¶ 151.

[31] *Id.* at ¶ 148.

[32] *Id.* at ¶¶ 149–150.

[33] *Id.* at ¶¶ 152, 155.

[34] *Id.* at ¶¶ 153–154.

with Pennsylvania. He contends these contacts are insufficient to support personal jurisdiction.[35]

### Personal Jurisdiction Standards

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts establishing a basis for the exercise of jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330, 336 (3d Cir. 2009) (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)). In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), as we do with a motion to dismiss for failure to state a claim under Rule 12(b)(6), we accept as true the plaintiff's allegations and draw all reasonable inferences in favor of the plaintiff. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). However, unlike with Rule 12(b)(6), the scope of review under Rule 12(b)(2) is not limited to the face of the pleadings. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citation omitted). Once a defendant challenges personal jurisdiction, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe*, 566 F.3d at 330 (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).

If there is no evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Shuker*, 885 F.3d at 780. To determine whether the plaintiff has made this *prima facie* showing, we assume all factual allegations in the affidavits and

---

[35] Def.'s Mot. to Dism. at 1; Def.'s Reply at 1 (ECF No. 26).

other evidence submitted to be true and construe all factual disputes in the plaintiff's favor. *Metcalfe*, 566 F.3d at 331, 333.[36]

There are two types of personal jurisdiction, general and specific. The focus of general jurisdiction is on the relationship between the defendant and the forum state, not on the relationship of the claims to the forum. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The specific jurisdiction inquiry focuses on the relationship of the litigation to the defendant's contacts with the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Before exercising personal jurisdiction over a nonresident, the court must conduct a two-step analysis. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). First, there must be a statutory basis under the law of the forum state for exercising jurisdiction. *Walden*, 571 U.S. at 283 (citing *Daimler AG v. Bowman*, 571 U.S. 117, 125 (2014)); FED. R. CIV. P. 4(k)(1)(A). Second, the nonresident must have sufficient minimum contacts with the forum state to satisfy constitutional due process. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

*Statutory Basis for Jurisdiction*

Pennsylvania's long-arm statute supplies several bases for personal jurisdiction over a nonresident individual. 42 Pa. Cons. Stat. Ann. §§ 5301, 5322; *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 & n.1 (3d Cir. 1998). Section 5301

---

[36] If the alleged jurisdictional facts remain in dispute later in the litigation, we are free to "revisit[]" the jurisdictional question. *Shuker*, 885 F.3d at 781 (citing *Metcalfe*, 566 F.3d at 331, 336). At this later stage, instead of construing the evidence in the plaintiff's favor, we consider the evidence presented by both parties and decide the factual disputes in light of the plaintiff's burden to establish jurisdiction by a preponderance of the evidence. *Metcalfe*, 566 F.3d at 331, 336 (citing *Carteret*, 954 F.2d at 142 n.1).

provides for general jurisdiction over an individual defendant who was domiciled or present in the state at the time of service of process, or who consents to suit. 42 Pa. Cons. Stat. Ann. § 5301(a)(1)(i)–(iii). When personal jurisdiction is premised on this section of the Pennsylvania long-arm statute, any cause of action may be asserted against the defendant whether or not it arises from acts forming the basis of jurisdiction. *Id.* § 5301(b).

Section 5322 enumerates activities and contacts in Pennsylvania that provide a basis for exercising specific jurisdiction over a non-resident defendant.  The list includes causing harm or tortious injury in Pennsylvania by an act or omission in or outside Pennsylvania. *Id.* § 5322(a)(3)–(4). Pertinent to this case is the "tort out/harm in" provision which confers specific jurisdiction over anyone who "[c]aus[es] harm or tortious injury in th[e] Commonwealth by an act or omission outside th[e] Commonwealth." *Id.* § 5322(a)(4); *Pennzoil*, 149 F.3d at 200 n.1. Additionally, section 5322(b) provides that specific jurisdiction extends "to all persons who are not within the scope of section 5301 . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Under this section, only causes of action arising from the defendant's contacts with the forum may be asserted. *Id.* § 5322(c).

*Minimum Contacts with Pennsylvania*

A statutory basis for the exercise of personal jurisdiction alone is insufficient. The exercise of jurisdiction must also be consistent with the limits imposed by the Due Process Clause of the Fourteenth Amendment. *Walden*, 571 U.S.at 283 (citing *Daimler*, 571 U.S.

at 125). To satisfy this test, the plaintiff must establish "certain minimum contacts" between the nonresident defendant and the forum so that the exercise of jurisdiction will "not offend 'traditional notions of fair play and substantial justice.'" *Tyrrell*, 137 S. Ct. at 1558 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### General Jurisdiction

Kalina does not live in Pennsylvania, was not served with process here, and has not consented to jurisdiction. Therefore, there is no basis for the exercise of general jurisdiction under Pennsylvania's long-arm statute.

### Specific Jurisdiction

Specific jurisdiction arises when the cause of action is related to or arises out of the defendant's contacts with the forum and the plaintiff's injury in the forum is related to those contacts. *Id.* (quoting *Daimler*, 571 U.S. at 127). The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (internal quotations omitted)).

The "traditional test" for the exercise of specific jurisdiction over a nonresident defendant has three requirements. First, the defendant's conduct must have been purposefully directed at the forum state, resulting in contacts with the forum. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881, 883 (2011) (minimum contacts requires "contact with and activity directed at" the forum state) (citations omitted). Second, the plaintiff's claim must arise out of or relate to those contacts. *Walden*, 571 U.S. at 284 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Third, if the first two requirements are met, the court considers whether the exercise of jurisdiction otherwise

comports with "fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Burger King*, 471 U.S. at 476).

In a case of an intentional tort, a defendant may still be subject to jurisdiction under the *Calder* "effects test" even though it lacks sufficient contacts with the forum to satisfy due process. *See Calder v. Jones*, 465 U.S. 783 (1984). *Calder* recognizes that, in certain circumstances, the relationship among the defendant, the forum, the plaintiff and the intentional tort may render a defendant's otherwise insufficient contacts with the forum under the "traditional test" sufficient. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260, 265 (3d Cir. 1998).

In *IMO Industries*, the Third Circuit articulated the *Calder* "effects test." *Id.* at 256, 265–66. The plaintiff must show the following:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm [caused by that tort] in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.*

To establish minimum contacts under the *Calder* "effects test," the forum must have been the focal point of both the tortious conduct and the harm suffered. *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789). The defendant must have expressly aimed his tortious activity at the forum, knowing that the effects of its conduct were likely to be felt by the plaintiff there *and* making the forum the focal point of its conduct.

The third prong of this test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 265 (emphasis in original). It is not enough that the defendant's conduct affects a plaintiff who is connected to the forum state, or that the plaintiff experienced or felt the injury or effect of the defendant's conduct in the forum. *Walden*, 571 U.S. at 290 ("mere injury to a forum resident is not a sufficient connection to the forum" to satisfy *Calder*); *IMO Indus.*, 155 F.3d at 263. The "effects" of the tortious conduct must connect the defendant to the forum, not just to the plaintiff. *Walden*, 571 U.S. at 287. "The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Through his intentional conduct, "it is the defendant, not the plaintiff . . . , who must create contacts with the forum State." *Id.* at 286, 291. Thus, in addition to showing that the defendant knew the plaintiff would feel the brunt of the harm caused by its tortious conduct in the forum, the plaintiff must point to specific conduct by the defendant that was intentionally targeted at and focused on the forum. *Id.* at 265–66.

## Analysis

Kalina contends that there is no basis for general or specific personal jurisdiction over him.[37] He is a Connecticut resident who neither physically works nor owns property in Pennsylvania.[38] His emails and letters to Shanahan regarding her FMLA leave, accommodations and termination were read in Delaware where Shanahan lives and spent her medical leave.[39] He claims there are no allegations that Kalina ever visited

---

[37] Def.'s Mot. to Dism. at 1.

[38] *Id.* at 1, 7.

[39] *Id.* at 7–8, 11–12; Def.'s Reply at 3.  Kalina assumes Shanahan received, opened, and read his emails in Delaware.  His emails were not necessarily directed there.  Shanahan could have received,

Pennsylvania, directed his communications at Pennsylvania or expressly aimed tortious conduct at Pennsylvania.[40]

Shanahan counters that Kalina oversees Ethan Allen employees working in Pennsylvania.[41] She contends that Kalina specifically directed his activities towards her as an employee at the Chadds Ford, Pennsylvania store, and routinely interacted with other Pennsylvania Ethan Allen employees there.[42] According to Shanahan, because Pennsylvania is the state where she worked and where she sought to return to her employment, Pennsylvania is the focal point of the tortious activity and the harm she suffered.[43]

The Third Circuit instructs that we should first consider the third *Calder* element. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus.,* 155 F.3d at 266) ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements."). Kalina expressly aimed his alleged discriminatory and retaliatory conduct at Pennsylvania.

Shanahan may have received Kalina's letters and emails in Delaware. But, that is not dispositive. The communications related to her employment in Pennsylvania, concerned her medical leave from that employment, and her ability to return to work or apply for new jobs there. It does not matter than Shanahan lives in Delaware. What

---

opened, and read Kalina's emails anywhere, including Pennsylvania.  In short, the emails were not sent to any particular state, but to Shanahan where ever she was at that time.

[40] Def.'s Mot. to Dism. at 1, 8, 11–12.

[41] Pl.'s Resp. at 1 (ECF No. 23).

[42] *Id.* at 1, 6, 9, 11–12.

[43] *Id.* at 12–13.

matters is where she worked—Pennsylvania.  That was the focal point of the harm. That is where Kalina's actions were directed.  He aimed to terminate Shanahan's employment there.

The first two *Calder* elements are also met. With respect to the first element that the defendant committed an intentional tort, Shanahan's causes of actions are predicated on intentional conduct.  Employment discrimination and retaliation causes of actions are treated as intentional torts for purposes of the *Calder* test.[44] Therefore, we conclude that Shanahan's employment discrimination claims are intentional torts for purposes of the *Calder* analysis.

With respect to the second element that the plaintiff felt the brunt of the harm in the forum, Shanahan felt the brunt of the harm in Pennsylvania. Though she lived in Delaware, she was employed in Pennsylvania. The alleged discriminatory and retaliatory actions were directed against her as an employee in Pennsylvania. Kalina's letters and emails may have been read in Delaware, but they related to her employment in Pennsylvania—the focal point of the harm. *See Wright*, 882 F. Supp. at 406

---

[44] Courts in the Third Circuit have applied the *Calder* effects test to cases involving employment discrimination claims. *See Tann v. U.S. Steel Corp.*, No. 15-3, 2015 WL 3609913, at *10 (W.D. Pa. June 8, 2015) (finding the defendants "are alleged to have committed an intentional tort which Plaintiff (a Pennsylvania resident) felt the brunt of in Pennsylvania and they did so while or after communicating with [the other defendants] in Pennsylvania" in a case alleging race and religious discrimination, hostile work environment, and retaliation under Title VII and the PHRA); *Jaipaul v. Pliant Corp.*, No. 07-4031, 2008 WL 2746291, at *4 (E.D. Pa. July 14, 2008) (applying *Calder* to employment discrimination claims brought under Title VII and other civil rights statutes); *Corrales Martin v. Clemson Univ.*, No. 07-536, 2007 WL 4531028, at *8 (E.D. Pa. Dec. 20, 2007) (same); *Wright v. Xerox Corp.,* 882 F. Supp. 399, 406 (D.N.J. 1995) (applying *Calder* in a case brought under New Jersey's Law Against Discrimination).

Courts in other Circuits have similarly considered "statutory, civil rights tort[s]" as torts for purposes of the due process arm of the personal jurisdiction analysis. *See, e.g., Barclay v. Hughes,* 462 F. Supp. 2d 314, 317 (D. Conn. 2006) (noting other cases where courts "assumed, without discussion, that a § 1983 or other federal statutory violation constitutes a tort for purposes of a state's long-arm statute.") (citations omitted); *Scott v. Nat'l Ass'n for Stock Car Racing, Inc.,* No. 06-6029, 2008 WL 217049, at *6 (S.D.N.Y. Jan. 17, 2008) ("Allegations of § 1981 and § 1985 violations are properly understood as 'torts' for the purpose of personal jurisdiction analysis.").

("Discrimination by an out-of-state employer against an employee in this state is an act directed at this state. The harm is felt here[.]").

Shanahan has satisfied the *Calder* effects test. Because we find that we can exercise personal jurisdiction over Kalina under the *Calder* test, we need not consider whether we have specific jurisdiction under the traditional test.

### Conclusion

Shanahan has sufficiently alleged that Kalina expressly aimed his tortious activity at Pennsylvania, and that she felt the brunt of the harm in Pennsylvania. Therefore, because we may exercise personal jurisdiction over Kalina under the *Calder* effects test, we shall deny Kalina's motion to dismiss.