**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAMARA SHANAHAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 2:21-CV-00595-TJS |
| | : |
| ETHAN ALLEN RETAIL, INC., KATE | : |
| SAVINO, and ROBERT KALINA | : |
| | : |
| Defendants. | : |

**BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS ETHAN ALLEN RETAIL,
INC., KATE SAVINO, AND ROBERT KALINA FOR SUMMARY JUDGMENT**

**FISHER & PHILLIPS LLP**
Christina M. Michael, Esquire
Deniz Uzel Reilly, Esquire
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, Pennsylvania 19103
Telephone:  (610) 230-2150
Facsimile:  (610) 230-2151
cmichael@fisherphillips.com
dreilly@fisherphillips.com

*Attorneys for Defendants Ethan Allen Retail,
Inc., Kate Savino, and Robert Kalina*

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS.................................................................. ii

I.      INTRODUCTION ..................................................................1

II.     FACTUAL BACKGROUND...................................................3

III.    LEGAL ARGUMENT ...........................................................3

        A.      Legal Standard for Grant of Summary Judgment ..............................3

        B.      Summary Judgment Should be Granted in Favor of Ethan Allen Because Plaintiff
                Failed to Establish a Prima Facie Case of Discrimination or Retaliation..........5

                1.      Plaintiff Has Failed to Establish a Prima Facie Case of Disability
                        Discrimination in Violation of the ADA and the PHRA .....................6

                        a.   Plaintiff has not established that she was disabled
                             under the ADA..............................................................7

                        b.   Plaintiff has not established that she was "regarded as"
                             disabled under the ADA...............................................10

                        c.   Plaintiff has not established the third prong of her
                             prima facie case of disability discrimination. ...............13

                             i.    Plaintiff Was Not Entitled to a Reasonable
                                   Accommodation.............................................13

                             ii.   Plaintiff Failed to Engage in the Interactive
                                   Process in Good Faith .....................................15

                             iii.  Plaintiff's Insistence Upon an Indefinite Job-Protected
                                   Leave Is Not a Reasonable Accommodation ...................19

                             iv.   Plaintiff's Request for Additional Job-Protected
                                   Leave Created an Undue Hardship for the Chadds
                                   Ford Design Center ...........................................22

                2.      Plaintiff Has Failed to Establish a Prima Facie Case of
                        Age Discrimination Under the ADEA or the PHRA .........................25

                3.      Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation
                        Under the ADEA, the ADA, the PHRA, or the FMLA .....................27

a.   Plaintiff Did Not Engage in Protected Activity ............................27

b.   Plaintiff Has Not Produced Evidence of a Causal Link Between an Allegedly Protected Activity and an Adverse Employment Decision..................................................29

c.   Plaintiff Fails to Establish a <u>Prima Facie</u> Case of Retaliation Based on Her Theory that She Was Retaliated Against for Taking FMLA Leave ..................................................31

C.   Ethan Allen Has Established a Well-Documented, Legitimate, Non-Retaliatory, and Non-Discriminatory Reason for Filling Plaintiff's Position and Terminating Plaintiff's Employment ........................33

D.   Plaintiff is Unable to Put Forth Any Evidence to Demonstrate that Ethan Allen's Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Filling Plaintiff's Position and Terminating Plaintiff's Employment Were Pretextual ........................................34

E.   Summary Judgment Should be Granted in Favor of Ethan Allen Because Plaintiff Has Failed to Establish that Ethan Allen Harassed Plaintiff on the Basis of her Age or her Disability..........................................37

F.   Plaintiff Has Not Established Personal Liability Against Savino and Kalina .39

G.   Judgement Should Be Entered relating to Plaintiff's Alleged Damages ........41

1.   Plaintiff Is Not Permitted to Recover Punitive Damages ...................41

2.   The Court Should Strike Plaintiff's Demand for a Jury Trial..............42

3.   Plaintiff's Failure To Accept An Offer Of Employment And Acknowledgment That Her Employment With Ethan Allen Would Have Been Terminated Precludes Plaintiff from Seeking Back Pay or Front Pay ........................................43

H.   Plaintiff Has Failed to Establish that the Court May Exercise Personal Jurisdiction Over Defendant Kalina..................................44

V.   CONCLUSION...........................................................50

FP 42100505.11

## I.     **<u>INTRODUCTION</u>**

Defendant Ethan Allen Retail, Inc. ("Ethan Allen") engaged in an extensive interactive process in a good faith attempt to return Plaintiff Tamara Shanahan to her position as a Design Consultant following her surgery for a foot injury, with or without a reasonable accommodation. Ethan Allen provided Plaintiff with, <u>inter</u> <u>alia</u>, multiple leaves of absence, workplace accommodations for her physical restrictions, as well as a three-month period of time, following her return to work from her medical leave, during which Plaintiff would not receive discipline even if her poor sales performance typically would have warranted such discipline.

After Plaintiff exhausted all available leave under the Family and Medical Leave Act ("FMLA"), and continued to request job-protected medical leaves of absence, Ethan Allen conducted a thorough evaluation as to the impact of Plaintiff's ongoing and open-ended absence. After determining that such a leave of absence was unreasonable and created an undue hardship on the Chadds Ford Design Center (where Plaintiff worked), Ethan Allen still permitted Plaintiff to remain on leave, but explained that they could not continue to hold open her position, due to the needs of the business and the impact on the other Design Consultants at the Chadds Ford Design Center.  Plaintiff was repeatedly asked to keep Ethan Allen informed of her status and ability to return to work, and Ethan Allen explained to Plaintiff that she would be welcomed back if her position was still open when she was cleared to return to work from her medical leave.

In fact, Plaintiff did return to work for a brief time, during which she received accommodations to address every restriction noted by her physician, as well as a grace period to get her sales back on track.  Shortly after her return, however, Plaintiff again requested a further job-protected leave of absence, without providing a definitive return to work date.  Again, Ethan

Allen permitted Plaintiff to return to a leave of absence, but explained that her position would not be held open.  Plaintiff was asked to keep Ethan Allen informed of her status and ability to return to work.

Plaintiff, however, ultimately failed to keep Ethan Allen informed of her recovery progress and explore whether she could have returned to work with a reasonable accommodation.  As such, Plaintiff, not Ethan Allen, unilaterally ended the interactive process. Instead of interacting in good faith with her employer, Plaintiff insisted she wanted the accommodation she dictated – returning to a ***third*** job-protected leave of absence as Ethan Allen approached one of the busiest times of the year, with an uncertain return date that would not be until after she received all payments pursuant to her short term disability benefits, and until after she traveled for the holiday season, rather than return to work.

Moreover, Plaintiff, by her own admission is and was not disabled – neither actually disabled nor regarded as disabled – at the time of her termination of employment from Ethan Allen as a result of her foot injury.

In the Amended Complaint, Plaintiff alleges four causes of action:  (1) alleged age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) alleged disability discrimination, retaliation, failure to accommodate, and hostile work environment in violation of the Americans with Disabilities Act, as Amended ("ADA"); (3) alleged retaliation in violation of the FMLA; and (4) alleged disability discrimination, age discrimination, and aiding and abetting discrimination, harassment, and retaliation in violation Pennsylvania Human Relations Act ("PHRA").  Because Plaintiff was not disabled, refused to engage in good faith in the interactive process, insisted on an accommodation that was unreasonable as a matter of law, and has not identified any evidence in support of her claims of age discrimination or retaliation

FP 42100505.11

of any kind, Defendants Ethan Allen Retail, Inc., Kate Savino, and Robert Kalina are entitled to summary judgment on every claim in Plaintiff's Amended Complaint.

## II.   FACTUAL BACKGROUND

Ethan Allen incorporates the Statement of Undisputed Facts of Defendants Ethan Allen Retail, Inc., Kate Savino, and Robert Kalina (hereinafter "Facts") as though fully set forth herein.

## III.   LEGAL ARGUMENT

### A.   Legal Standard for Grant of Summary Judgment

Summary judgment is appropriate where no genuine disputes of material fact exist, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is properly entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "To be a genuine issue, the evidence must be 'such that a reasonable jury could return a verdict for the non-moving party.'"  Edwards v. Pa. Tpk. Comm'n, 80 F. App'x 261, 263 (3d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podonik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex, 477 U.S. at 325).  See also Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (explaining that the non-moving party must raise "more than a mere scintilla of evidence in its favor, . . . and cannot simply reassert factually unsupported allegations contained in its pleadings").  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id. at 460 (quoting Anderson, 477 U.S. at 256-57).  "If the evidence is

merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson, 477 U.S. at 249-50.

Moreover, a plaintiff cannot create an issue of fact by misstating or misrepresenting the evidence.  S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).  Specifically, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  Id.  When the non-moving party bears the burden of proof at trial, the moving party can demonstrate that there is no genuine issue of material fact by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Likewise, a plaintiff's reliance on her testimony alone is insufficient to establish a material issue of fact and overcome a motion for summary judgment.  See Solomon v. Soc'y of Auto. Eng'rs, 41 F. App'x 585, 586 (3d Cir. 2002).  Consequently, summary judgment in favor of defendant is appropriate where a plaintiff fails to offer any evidence, beyond his or her own testimony, to support his or her claims.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 414 (3d Cir. 1999) (deeming unsupported allegations based solely on plaintiff's beliefs without having actual knowledge to be irrelevant); Markham v. Reish, No. 08-2222, 2010 WL 2632728, at *5 (M.D. Pa. June 25, 2010) (holding that summary judgment was appropriate because the record contained no evidence supporting plaintiff's allegations "beyond [p]laintiff's own testimony"); Fusco v. Bucks Cnty., No. 08-2082, 2009 WL 4911938, at *11 (E.D. Pa. Dec. 21, 2009) (holding that summary judgment was appropriate where plaintiff offered "no support, beyond her own testimony, to corroborate her claims").

FP 42100505.11

**B.     Summary Judgment Should be Granted in Favor of Ethan Allen Because Plaintiff Failed to Establish a <u>Prima</u> <u>Facie</u> Case of Discrimination or Retaliation**

Plaintiff cannot sustain her evidentiary burden of establishing discrimination on the basis of age or disability, or retaliation on the basis of age, disability, request for accommodation, or use of FMLA leave under the <u>McDonnell Douglas</u> analytical framework.

Discrimination and retaliation claims under the ADA, ADEA, and the PHRA undergo an identical analysis – the Court follows the burden-shifting analysis set forth in <u>McDonnell Douglas Corporation v. Green</u>.  411 U.S. 792, 802 (1973); <u>Thimons v. PNC Bank, N.A.</u>, 254 F. App'x 896, 897 (3d Cir. 2007) (noting that claims under the ADA, ADEA, and the PHRA all follow the framework set forth in <u>McDonnell Douglas</u>); <u>Fasold v. Justice</u>, 409 F.3d 178, 188 (3d Cir. 2005) (explaining that retaliation claims typically proceed under the <u>McDonnell Douglas</u> framework).  Likewise, retaliation claims pursuant to the FMLA[1] follow the familiar <u>McDonnell Douglas</u> burden-shifting framework.  <u>Ross v. Gihuly</u>, 755 F.3d 185, 193 (3d Cir. 2014) (noting that <u>McDonnell Douglas</u> applies to FMLA retaliation claims).  Notably, even in the absence of direct evidence, Plaintiff must still present "circumstantial evidence that would allow a reasonable factfinder to infer intentional discrimination."  <u>Bailey v. United Airlines</u>, No 97-5223, 2002 WL 1397476, at *2 (E.D. Pa. June 26, 2002) (citing <u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1095, n.3 (3d Cir. 1995)).

The first prong of the three-part <u>McDonnell Douglas</u> analysis is a determination of whether the plaintiff has met her initial obligation to establish a <u>prima facie</u> case of discrimination or retaliation.  <u>Jones</u>, 198 F.3d at 410.  If a plaintiff fails to establish a <u>prima facie</u>

---

[1]     Plaintiff's Amended Complaint makes no reference to any interference with her FMLA leave, and she was provided all leave available under the FMLA.  Thus, it is clear that Plaintiff is not making a claim for FMLA interference.  See Facts ¶ 29.

case, the Court can dispose of the case "without the heavy lifting that is required if a prima facie case is made out." Dorsey v. Pittsburgh Assocs., 90 F. App'x 636, 639 (3d Cir. 2004). "If the plaintiff is successful in making out a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [its] action." Id. (internal citations omitted). "If the defendant satisfies this relatively light burden, the burden of production shifts back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination [or retaliation]." Matos v. Merck & Co., No. 13- 2648, 2015 WL 894253, at *7 (E.D. Pa. Mar. 3, 2015), aff'd, 643 F. App'x 187 (3d Cir. 2016). "[T]he plaintiff has the ultimate burden of persuasion at all times." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015). Therefore, summary judgment in favor of Defendants is appropriate where, as is the case here, Plaintiff has failed to establish a prima facie case of discrimination or retaliation.  Law v. Garden State Tanning, 159 F. Supp. 787, 794 (E.D. Pa. 2001).

       1.     *Plaintiff Has Failed to Establish a Prima Facie Case of Disability Discrimination in Violation of the ADA and the PHRA*

Plaintiff has failed to establish a prima facie case of disability discrimination.  To establish a prima facie case of disability discrimination, Plaintiff must show that she: (1) is a disabled person under the ADA; (2) is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) has suffered an adverse employment action because of his disability.  Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  Here, Plaintiff cannot establish the first and third elements and, therefore, fails to state a prima facie case of disability discrimination.

6

a.      <u>Plaintiff has not established that she was disabled under the
ADA.</u>

Summary judgment should be granted in favor of Ethan Allen because Plaintiff has failed
to establish the first element of her <u>prima facie</u> case – that she was disabled as a matter of law.
Plaintiff was neither actually disabled nor regarded as being disabled at the time of the
termination of her employment, or at the time she was informed her position was filled.  Instead,
Plaintiff suffered a foot injury for which she had surgery.  <u>See</u> Facts ¶¶ 22-23, 26.  Thereafter,
Plaintiff had a recovery period and, before her employment was terminated, she was "ready to
go" and none of her life activities were impacted by her foot.  <u>See</u> Facts ¶¶ 91, 95 (confirming
that her foot was completed corrected by the surgery).

"At the summary judgment stage, the plaintiff has the obligation of presenting some
evidence of a condition that substantially impaired a major life activity at the time of [the adverse
action]."  <u>Sever v. Henderson</u>, 381 F. Supp. 2d 405, 416 (M.D. Pa. 2005), <u>aff'd</u>, 220 F. App;x
159 (3d Cir. 2007) (finding that the plaintiff's failure to present evidence of a disability at the
time of discharge entitled defendants to summary judgment); <u>see also</u> <u>Parrotta v. PECO Energy
Co.</u>, 363 F. Supp. 3d 577, 591 (E.D. Pa. 2019) ("We measure disability at the time the adverse
action occurred.").

Although the 2008 Amendments to the ADA liberalized the construction of the term
"disability," courts continue to evaluate how long the alleged impairment lasted in determining
whether it substantially limits a major life activity and qualifies as a disability.  <u>See</u> <u>Bush v.
Donahoe</u>, 964 F. Supp. 2d 401, 418 (W.D. Pa. 2013) (granting defendant's motion for summary
judgment because plaintiff could not establish that the sprained ankle substantially limited her
ability to engage in major life activities where the injury was not chronic, required the use of a
boot for less than four months, and no evidence was presented that the plaintiff received any

7

other treatment or had any other restrictions to daily life while wearing the boot); Kurlyo v.

Parkhouse Nursing & Rehab Ctr., LP., No. 17-00004, 2017 WL 1208065, at *4 (E.D. Pa. Apr. 3,

2017) (granting defendant's motion to dismiss the disability claim because there was nothing to

indicate that the alleged disability was anything more than a "one-time occurrence with a limited

recovery period").  Even under the liberal construction required pursuant to the ADA's 2008

Amendments, the Regulations nevertheless caution that "[n]ot every impairment will constitute a

disability," and even "an injury or illness involving several months of limitations, without long-

term or permanent effect, is not a disability under the ADA."  Kurlyo, 2017 WL 1208065, at *4.

Further, that an impairment requires surgery, does not necessarily qualify the injury as a

disability.  See Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa.

2012) (rejecting plaintiff's argument that an ACL tear that requires surgery necessarily qualifies

as a disability under the ADA) (citing 154 Cong. Rec. H8286 (2008) (statement of Rep. George

Miller)); Parrotta, 363 F. Supp. 3d at 591-92; Brearey v. Brennan, No. 17-02108, 2019 WL

111037 (E.D. Pa. Jan. 4, 2019).

In Brearey, for example, the plaintiff fell and broke his ankle in three places.  2019 WL

111037, at *2.  The injury was sustained in October 2014, and plaintiff was told by his physician

that he would be restricted to crutches for six to eight weeks.  See id.  When plaintiff

communicated his injury, as well as the restrictions, to his manager, the post office terminated

his employment.  See id.  Plaintiff subsequently had surgery on his ankle in December 2014 and

continued to receive follow-up treatment through September 2015, marking a year following his

fall.  See id.  By April 2015, seven months after his injury, plaintiff was able to walk again with

the assistance of a single crutch, and by the end of May 2015 he was able to walk without

assistance.  See id.  Notably, at the time of his deposition, the plaintiff in Brearey still was not

fully recovered, and specifically testified that his ankle hurt when standing, and that he could not stand for more than four to five hours at a time.  See id.  Relying on the prevailing case law in the Third Circuit, Judge Goldberg held that "[b]ecause the undisputed evidence establishes that Plaintiff's ankle injury involved '[s]everal months of limitations, without long-term or permanent effect' Plaintiff has failed to establish an actual disability" as a matter of law.  Id. at *6.

Similarly, in Parrotta, Judge Kearney acknowledged Congress's mandate to construe "disabled" broadly, but explained that the plaintiff was like the employee in Brearey, in that he had an injury, underwent surgery, and was cleared to full work duty with no restrictions, no prescribed medications, and no further treatments.  See Parrotta, 363 F. Supp. 3d at 591-92 (citing Brearey, supra).  As a result, the plaintiff in Parrotta had adduced no evidence, other than his own testimony, of suffering a long-term foot disability or being disabled when terminated and, therefore, failed to raise a genuine issue of fact as to whether he had an "impairment that substantially limits one or more major life activities" when his employer fired him.  Id. at 592.

Here, similar to plaintiffs in Brearey and Parrotta, Plaintiff suffered an injury, had surgery to correct the injury in July of 2019, the surgery completely corrected her foot, and, by Plaintiff's own admission, recovered to the point of having no limitations by January of 2020, at the latest. See Facts ¶¶ 22, 26, 91, 95.  As such, Plaintiff has not adduced any evidence that her injured foot was anything other than a one-time occurrence with a limited recovery period and, therefore, Plaintiff was not disabled as a matter of law.  See, e.g., Brearey, Parrotta, supra.  Indeed, unlike the plaintiffs in Parrotta and Brearey, Plaintiff *does not even provide her own testimony that she was still injured or in pain at the time of the adverse action*.  See Facts ¶ 91.  To the contrary, Plaintiff testified that she was "ready to go" by January of 2020 and **none of her activities were impacted at that point**.  Id.  In fact, it is clear that Plaintiff was fully recovered by mid-

December as Plaintiff informed her physician that she traveled over the holidays, shortly before the termination of her employment, and felt "like her right foot is brand new." See id. ¶¶ 94-95. Only after Plaintiff enjoyed her holiday break did she request a return to work note from her physician.  See id. ¶¶ 100, 103.  Plaintiff's physician noted Plaintiff's "right foot is well healed and she is able to return to work with no restrictions *per her request*."  See id. ¶ 100; see also Anderson v. Discovery Commc'ns, LLC, 814 F. Supp. 2d 562, 571 (D. Md. 2011); Wilson v. Iron Tiger Logistics, Inc., 628 F. App'x 832, 835 (3d Cir. 2015) ("[Plaintiff's] doctor's note confirms the limited nature of his impairment[.]"); Facts ¶ 91 (noting Plaintiff's improved condition as of December 8, 2019).

Accordingly, Plaintiff's foot injury is not a disability[2] within the meaning of the ADA or the PHRA.  Because Plaintiff was not actually disabled, she is unable to establish a prima facie case of disability discrimination and, therefore, summary judgment should be granted in Ethan Allen's favor.

> b.  Plaintiff has not established that she was "regarded as" disabled under the ADA.

Plaintiff makes the conclusory allegation in the alterative that she was regarded as having a disability.  This argument likewise fails because Plaintiff's recovery from a surgical procedure is objectively transitory and minor and, accordingly, Plaintiff cannot establish that she was "regarded as" disabled under the ADA.

A plaintiff claiming that she was perceived or regarded as having a disability must show that she was subjected to an adverse action because of an actual or a perceived physical or

---

[2]    To the extent Plaintiff tries to add she suffered from any other disabilities, such disabilities were not pleaded, nor does she claim that Defendants were aware of such disabilities, a necessary element to a claim of disability discrimination. See Curran v. Se. Pa. Transp. Auth., No. 13-5919, 2015 WL 1542290, at *6 (E.D. Pa. Apr. 7, 2015) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir.2002)) ("To establish discrimination because of a disability, an employer must know of the disability.").

mental impairment, whether or not the impairment limits or is perceived to limit a major life

activity.  See 42 U.S.C. § 12102(3)(1).  Where, as here, the plaintiff does not suffer from an

actual disability, the allegedly perceived disability as a matter of law cannot be "transitory and

minor."  See 42 U.S.C. § 12102(3)(B) ("regarded as" provision does not apply to impairments

that are "transitory and minor").  The ADA defines "transitory and minor" as "an impairment

with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B); Kiniropoulos

v. Northampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013) ("Notably,

where a plaintiff is merely regarded as disabled rather than suffering from an actual disability,

the perceived impairment must not be transitory and minor.") (emphasis in original) (citing 42

U.S.C. § 12102(3)(B)).  Mere awareness of an impairment, however, is insufficient to establish

that it regarded the employee as disabled.  Breary, supra; Gavurnik v. Home Props., L.P., 227 F.

Supp. 3d 410, 419 (E.D. Pa. 2017), aff'd 712 F. App'x 170 (3d Cir. 2017) (finding that plaintiff

provided no evidence the employer remarked on his condition as necessary to show employer

regarded the plaintiff as disabled).

"Whether the impairment at issue is or would be 'transitory and minor' is to be

determined objectively."  29 C.F.R 1630.15(f).  "That is to say, the relevant inquiry is whether

the impairment that the employer perceived is an impairment that is objectively transitory and

minor."  Budhon v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014).  The Third

Circuit has held that a broken bone is objectively transitory and minor, and affirmed denial of

leave to amend to add a "regarded as" claim under the ADA.  Id. at 259; see also Michalesko v.

Freeland Borough, 658 F. App'x 105, 107 (3d Cir. 2016) (single acute stress reaction is

objectively transitory and minor; dismissal affirmed); Kurlyo, 2017 WL 1208065, at *5 (citations

omitted) (missing two weeks of work for a "stomach problem" is objectively transitory and

minor).  In addition, **"a plaintiff's potential inability to work for a short period of time while recovering from an injury or surgery does not constitute a 'disability' under the ADA's 'regarded as' analysis."**  Kiniropoulos, 917 F. Supp. 2d at 386.

The evidence establishes that Plaintiff informed Ethan Allen that she was injured, had surgery, and that she repeatedly informed Ethan Allen that she expected to "completely recover" from that surgery.[3]  See Facts ¶¶ 22-24, 26, 86, 91, 93, 103.  As such, it would not be possible for Ethan Allen to perceive Plaintiff's foot injury as a disability within the meaning of the ADA. Instead, Plaintiff's impairment is objectively transitory and minor, which is insufficient under the ADA to support a "regarded as" disabled claim.  See 42 U.S.C. § 12102(3)(B); Cunningham v. Novo Nordisk, No. 12-6654, 2014 WL 1318390, at *6-9 (E.D. Pa. Apr. 1, 2014) (holding that plaintiff, after suffering a heart attack, receiving heart surgery, and recovering from heart surgery was not "regarded as" disabled).  In Brearey, Judge Goldberg held that plaintiff's broken ankle, and prolonged recovery, was not sufficient to "establish[] a 'perceived disability' where [plaintiff] informed [d]efendant that [plaintiff] had broken his ankle, would not be able to report for duty, and would be on crutches for six to eight weeks. . . . Plaintiff's broken ankle is objectively transitory and minor."  2019 WL 111037 at *8.  Here, like in Brearey, Plaintiff's injured foot is objectively transitory and minor, as a matter of law.

Because Plaintiff was neither actually disabled, nor regarded as being disabled, Plaintiff cannot make out a case of disability discrimination.  Summary judgment should, therefore, be granted in Defendants' favor as to Plaintiff's disability discrimination claims under the ADA and PHRA.

---

[3]    Plaintiff did, however, provide a shifting timeline as to when that "complete recovery" would occur.  See Facts ¶¶ 25, 30, 32, 85, 103.

FP 42100505.11

c.      <u>Plaintiff has not established the third prong of her prima</u>
<u>facie case of disability discrimination.</u>

Plaintiff cannot establish the third prong of her <u>prima</u> <u>facie</u> case of discrimination – that

she was discriminated against because of her disability.  The crux of Plaintiff's argument under

this prong is that Ethan Allen failed to reasonably accommodate her because it did not provide a

third job-protected leave of absence through an unconfirmed date.[4]  <u>Taylor</u>, 184 F.3d at 306

(explaining that when a plaintiff asserts a disability discrimination claim under a "failure to

accommodate" theory, a separate "failure to accommodate" analysis replaces the third prong of

the <u>prima</u> <u>facie</u> framework, which addresses an "adverse employment decision" suffered by a

plaintiff.); <u>see</u> <u>also</u> Facts ¶ 87 (noting that Plaintiff had to be out of work until she was

reevaluated), ¶ 115 (where Plaintiff testifies that the only accommodation she asked for but did

not receive was to be able to come back to work after a third leave of absence).  This argument

fails for several reasons.

i.      Plaintiff Was Not Entitled To A Reasonable
Accommodation

As an initial matter, because Plaintiff was not disabled, Ethan Allen had no obligation to

provide her with a reasonable accommodation.  The obligation to provide a reasonable

accommodation arises only for disabled persons, i.e., "an otherwise qualified individual <u>with a</u>

<u>disability</u> who is an applicant or employee."  42 U.S.C. § 12112(b)(5)(a) (emphasis added); 29

C.F.R. § 1630.9(a), (b), (e).  A plaintiff bringing a failure-to-accommodate claim must establish

that she was disabled, and her employer knew it.  <u>See</u> <u>Capps v. Modelez Global, LLC</u>, 847 F.3d

---

[4]      To the extent Plaintiff is attempting to argue that she was terminated ***because of*** an actual or
perceived disability, Plaintiff has failed to produce any evidence of this whatsoever.  Indeed, Plaintiff has
failed to establish that anyone at Ethan Allen was aware of her disability at the time of her termination,
because she had no disability at the time of her termination.  <u>See</u> Section II.B.1.a., b., <u>supra</u>.  It is
undisputed that Plaintiff had no known restrictions as of the date of her termination, and none of her life
activities were limited as a result of her foot injury.  <u>See</u> Facts ¶¶ 91, 103.

144, 157 (3d Cir. 2017).  As explained above, Plaintiff was not disabled.  Thus, Plaintiff cannot

establish the elements of a reasonable accommodation claim on the basis of an actual disability.

Plaintiff also cannot establish a claim for reasonable accommodation on the basis of a

perceived disability.  "[A]fter the 2008 Amendments went into effect, an individual who

demonstrates that she is 'regarded as' disabled, but who fails to demonstrate that she is actually

disabled, is not entitled to a reasonable accommodation."  Robinson v. First State Cmty. Action

Agency, 920 F.3d 182, 186 (3d Cir.), cert. denied, 140 S. Ct. 464 (2019); Kiniropoulos, 917 F.

Supp. 2d at 386.  The ADA provides that the employer "need not provide a reasonable

accommodation or a reasonable modification to policies, practices, or procedures to an individual

who meets the definition of disability in section 12102(1) of this title solely under subparagraph

(C) of such section [i.e., being regarded as having such an impairment]."  42 U.S.C. § 12201(h).

See also 29 C.F.R. § 1630.9(e) (reasonable accommodation not required for individual "regarded

as" disabled).  Claims based on a failure to accommodate can only be brought based upon an

actual disability; the ADA specifically provides that an employer is not required to accommodate

employees who are merely regarded as disabled.  Kiniropoulos, 917 F. Supp. 2d at 386.

Because Plaintiff did not suffer from an actual disability under the ADA, but was – by

her own admission – temporarily unable to show up and perform the job, Ethan Allen had no

obligation to accommodate her.

Notably, while Ethan Allen had no obligation to accommodate Plaintiff, it still did.

Plaintiff repeatedly requested (and was provided with) medical leave even though she had

exhausted her FMLA leave; Plaintiff also requested (and was provided with) several

accommodations in line with her brief return to work.  See Facts ¶¶ 29, 32, 50, 52, 54, 85, 89.

14

Because Plaintiff was not disabled – neither actually or regarded as – and because Plaintiff was, in fact, accommodated, Plaintiff's disability discrimination claim fails.

<div align="center">

ii.    Plaintiff Failed to Engage in the Interactive Process in Good Faith

</div>

Even if Plaintiff could establish that she was entitled to the protections of the ADA, she still cannot establish the third element of her prima facie case because she failed to engage in the interactive process in good faith.  Discrimination under the ADA "includes failing to make reasonable accommodations for a plaintiff's disabilities."  Serine v. Marshall, No. 14-4868, 2015 WL 803108, at *3 (E.D. Pa. Feb. 25, 2015) (citing Taylor, 184 F.3d at 306); Walton v. Mental Health Ass'n of SE Pa., 168 F.3d 661, 670 (3d Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)). See also Kessler v.  AT&T, No. 13-00207, 2015 WL 5598866, at *9 (M.D. Pa. Sept. 22, 2015) ("'[A] claim that an employer failed to accommodate an employee's disability is best viewed not as an independent claim under the ADA, but as a theory that may support a discrimination claim.'") (quoting Solomon v. Sch. Dist. of Phila., 882 F. Supp. 2d 766, 776 (E.D. Pa. 2012)). Under a failure to accommodate theory, a plaintiff still must establish a prima facie case of disability discrimination.  Willis v. Norristown Area Sch. Dist., 2 F. Supp. 3d 597, 606 (E.D. Pa. 2014).

 "To allege an adverse employment action through a failure to accommodate, [Plaintiff] must allege:  (1) [Defendant] knew about her disability; (2) she requested accommodations or assistance for her disability; (3) [Defendant] did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for [Defendant's] lack of good faith."  Serine, 2015 WL 803108, at *3 (citing Taylor, 184 F.3d at 319-20).

<div align="center">15</div>

"Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the [employee]." Williams v. PHA Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004). Significantly, "an employer has no requirement to provide the exact accommodation [the employee] want[s]; rather [a]ll the interactive process requires is that employers make a good-faith effort to seek accommodations." Hofacker v. Wells Fargo Bank Nat'l Ass'n, 179 F. Supp. 3d 463, 469 (E.D. Pa. 2016) (internal citations and quotations omitted) (emphasis added).

"In their quest for an adequate ADA accommodation, employees should not forget that *the entire purpose of such an accommodation is to permit them to continue working in their prior roles with certain adaptions*.  The purpose of the ADA is inherently adaptive.  It is not meant to be wielded like a sword, a kind of affirmative action mechanism that forces employers to hold open vacancies for unreasonable periods of time or create new positions altogether." Moore v. CVS Rx Servs., Inc., 142 F. Supp. 3d 321, 341 (M.D. Pa. 2015), aff'd, 660 F. App'x 149 (3d Cir. 2016) (emphasis added).  Additionally, "the question of reasonableness is one that is determined when both parties engage in the interactive process to find accommodations." Id. at 471.

Critically, the interactive process requires participation from both parties because "'[e]ach party holds information the other does not have or cannot easily obtain.'" Gardner v. SEPTA, 410 F. Supp. 3d 723, 743 (E.D. Pa. 2019) (citing Taylor 184 F.3d at 316)).  Moreover, a "[p]laintiff's failure to engage in the interactive process precludes [a failure to accommodate] claim." Hofacker, 179 F. Supp. 3d at 471-72; Ortiz-Martinez v. Fresenius Health Partners, PR, LLC, 853 F.3d 599 (1st Cir. 2017) (holding that employee's refusal to engage in interactive

process with employer precluded employer's liability under the ADA for failing to provide a reasonable accommodation); Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir.1996) ("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown. But where . . . the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow."). More specifically, an employee does not participate in the interactive process by simply choosing a position that is most to her liking and not moving from that position, as Plaintiff did here. E.g., Webster v. Methodist Occupational Health Ctrs., Inc., 141 F.3d 1236 (7th Cir. 1998) (finding that the employer did not violate its duty to consider transferring an industrial nurse where she insisted that she be placed on the day shift at a certain location, despite her inability to fulfill one of the employer's reasonable requirements).

In this case, Plaintiff ignored her legal duty and refused to engage in the interactive process, insisting, instead, that Ethan Allen provide her with the unreasonable accommodation of her choosing – a third job-protected leave of absence that would last through the holidays and until Plaintiff had received all of her short term disability payments. See Facts ¶¶ 85, 92-95, 100-101. See also Hofacker, 179 F. Supp. 3d at 471-72 (citing Hill v. Walker, 737 F.3d 1209, 1218 (8th Cir. 2013); Ortiz-Martinez, 853 F.3d 599; Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1173 (10th Cir. 1999) (explaining how a plaintiff's failure to engage in the interactive process can preclude his ADA claim)).

Defendants engaged in the interactive process in good faith, and reasonably accommodated Plaintiff's recovery from surgery on numerous occasions. Following Plaintiff's surgery in July of 2019, Defendants provided her FMLA leave. See Facts ¶ 29. Upon the

17

expiration of her medical leave, Ethan Allen consulted with Plaintiff to determine whether there were any reasonable accommodations that would allow her to return to work.  See id. ¶¶ 45-46. Plaintiff, however, insisted that she needed a further leave of absence.  Ethan Allen requested that Plaintiff keep it informed of her ability to return to work.  See id. ¶¶ 51, 89.

As a textbook example of how the interactive process should work, when Plaintiff timely informed Ethan Allen that she was ready to return to work, Ethan Allen welcomed Plaintiff back from her extended medical leave in November of 2019, and provided her with accommodations for all of the restrictions noted by her physician.  See id. ¶¶ 52-54.  Thereafter, Plaintiff went out on a third leave of absence, again insisting that she would not return to work, with or without accommodations, until she was re-evaluated by her physician, immediately after her short term disability benefits would expire.  See id. ¶¶ 85, 87.  Following the request for the third leave of absence, Ethan Allen reminded Plaintiff of all of the accommodations that had been provided to her to date, and informed her that, due to the needs of the business at the Chadds Ford Design Center, it would not be possible to hold her position open any longer.  See id. ¶ 89.  Plaintiff's employment was not terminated, however, and she was asked, to "keep [Defendants] informed of her medical status, especially when you are cleared to work, with or without restrictions."  See id.

Plaintiff did not keep Defendants informed of her recovery and medical status as she was requested by Ethan Allen and as she was required by applicable case law to do.  Id. ¶¶ 91-92; see Gardner, Moore, supra.  Plaintiff's own testimony and medical documentation makes clear that she was substantially recovered by December 8, 2019, and would have been able to return to work prior to January 8, 2020, even if she may have required some of the same accommodations Ethan Allen previously proved it was willing to provide.  See Facts ¶¶ 53-54, 91; see also

18

Gardner, supra.  Plaintiff chose, however, to keep her recovery process to herself, continue collecting short term disability benefits, and travel over the holidays, enjoying her "well-healed" and "like brand new" right foot, demonstrating not only that Plaintiff did not suffer from a disability the ADA, but also that she did not engage in good faith in the interactive process.  See Facts ¶¶ 91-95, 100.

Because Plaintiff refused to communicate her medical status in good faith and failed to seek a return to work when she clearly was able to do so, she deprived Ethan Allen of a meaningful interactive process.  See id. ¶¶ 91-92.  Plaintiff, therefore, cannot now seek to hold Ethan Allen for her loss of employment.  See Hofacker, supra.

Because Plaintiff failed to engage in the interactive process, summary judgment should be granted in Defendants' favor on Plaintiff's failure to accommodate claims.

     iii. Plaintiff's Insistence Upon an Indefinite Job-Protected Leave Is Not a Reasonable Accommodation

Even if Plaintiff was disabled and could demonstrate that she participated in good faith in the interactive process instead of insisting upon an accommodation of her choosing, Plaintiff still cannot establish the third element of her prima facie case of discrimination because her insistence upon a third leave of absence was not reasonable.   The ADA does not require that "any particular concession [] be made by the employer . . . [but instead what the ADA] requires is that employers make a good-faith effort to seek accommodations."  Id. (quotations and citations omitted).  "Reasonable accommodations" encompass modifications to policies or the work environment or to the manner under which duties are carried out "that enable an individual with a disability who is qualified to perform the essential functions of that position" or otherwise

place the individual on an equal footing with his coworkers.  29 C.F.R. § 1630.2(o)(1)(ii)-(iii) (2012).

While, in some circumstances, a leave of absence for medical treatment can be considered as a reasonable accommodation for a plaintiff's disability, "leave time must enable the employee to perform his or her essential job functions in the ***near future***."  Garner v. Sch. Dist. of Phila., 63 F. Supp. 3d 483, 492 (E.D. PA. 2014) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004)).  The weight of authority in the Third Circuit, as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation.  Id. (citing Fogleman v. Greater Hazleton Health Alliance, 122 F. App'x 581, 585 (3d Cir. 2004) (holding that an indefinite or open-ended leave "does not constitute a reasonable accommodation"); Peter v. Lincoln Technical Inst., 255 F. Supp. 2d 417, 437 (E.D. Pa. 2002) (citing to the Fourth, Fifth, Sixth, and Tenth Circuits in concluding that "indefinite leave is inherently unreasonable")).

Plaintiff's inconsistent communication regarding her timeline for recovery, along with the open-ended nature of her health care provider's doctors' notes indicated to Ethan Allen that Plaintiff was seeking an indefinite leave of absence, which is not a reasonable accommodation. See Garner, Fogleman, supra; accord Santandreu v. Miami Dade Cnty., 513 F. App'x 902, 905 (11th Cir. 2013) ("[T]he ADA does not require an employer to provide leave for an indefinite period of time because an employee is uncertain about the duration of his condition."); Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 466 (4th Cir. 2012)); See, e.g., Walton, 168 F.3d at 671 ("Although unpaid leave . . . might, under other Facts represent a reasonable accommodation, an employer does not have to allow leave of this type to the extent that [the employer] has already granted it to [plaintiff].").   Additionally, just because Ethan Allen

provided Plaintiff with additional job-protected leave for a period of time—beyond the requirements of the law—does not mean that it is required to continue to do so as a reasonable accommodation.  See Walton, 168 F.3d at 671 ("[T]he unpaid leave granted to [plaintiff] exceeded the requirement of reasonable accommodation under the ADA, and [defendant's] decision to discontinue the accommodation does not give her a cause of action against it.").

Further, an accommodation that would result in other employees having to work harder or longer is not required under the ADA.  See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir.1995) ("An accommodation that would result in other employees having to work[] harder or longer hours is not required."); 29 C.F.R. § 1630.2(p)(2)(v) (impact to other employees on their ability to do their duties is a relevant factor in determining the reasonableness of an accommodation); Irving v. Chester Water Auth., No. 08-5156, 2010 WL 2512370, at *5 (E.D. Pa. June 17, 2010), aff'd, 439 F. App'x 125 (3d Cir. 2011) ("Thus, an accommodation that would shift Plaintiff's burden to other employees or require other employees to work harder is not the type of reasonable accommodation envisioned by the ADA.").

The facts are clear that Plaintiff's absence required other Design Consultants to work harder and longer, and *still* resulted in a downturn of business that would impact the other Design Consultants' compensation, given their commissioned income.  See Facts ¶¶ 38-41, 97-98.  As a result, continuing to hold open Plaintiff's position was not a reasonable accommodation.  Because Plaintiff has not identified a reasonable accommodation that she was not provided, Defendants are entitled to summary judgment on Plaintiff's failure to accommodate claims.

iv.     Plaintiff's Request for Additional Job-Protected
        Leave Created an Undue Hardship for the Chadds
        Ford Design Center

Further, even if Plaintiff's third request for a job-protected leave of absence was not an

open-ended leave of absence that is an unreasonable accommodation as a matter of law, even if

Plaintiff had not failed to engage in in the interactive process and insisted only on the

accommodation of her choosing, Ethan Allen has demonstrated that continuing to hold Plaintiff's

position open was an undue hardship, warranting judgment against Plaintiff as to her failure to

accommodate claims.

"The ADA lists factors to evaluate when deciding whether having to provide an

accommodation would rise to the level of undue burden including the 'nature and cost of the

accommodation needed,' the 'type of operation or operations' of the employer, the 'overall

financial resources' of the employe[r], and the 'overall size of the business." Grosso v. UPMC,

857 F. Supp. 2d 517, 535 (W.D. Pa. 2012) (citing 42 U.S.C. § 12111(10)(B)(i)-(iv)).  It is

Plaintiff's burden to establish a reasonable modification exists, and then the burden shifts to

Defendant to show that the modification would present an undue hardship.  See Anderson v.

Franklin Inst., 185 F. Supp. 3d 628, 648 (E.D. Pa. 2016).  "The employer . . . holds the

information necessary to determine whether the proposed accommodation will create an undue

burden for it."  Walton, 168 F.3d at 670, 672 (affirming the district court's decision that the

"same evidence that demonstrates the legitimate, nondiscriminatory reason for firing plaintiff . . .

also demonstrates that the accommodation that plaintiff seeks [continuation of her leave] created

an undue burden for the organization" and further recognizing that the Defendants "had

produced sufficient uncontroverted evidence to meet the burden of demonstrating that the

requested accommodation, although possible, was not reasonable") (internal quotations omitted).

22

Ethan Allen's Design Centers are not typical furniture stores where an unassisted customer can select items from display models on the floor.  See Facts ¶ 7.  Instead, as a Design Consultant at the Chadds Ford Design Center, Plaintiff was a professional interior designer, and it was her responsibility to partner with the clients to design the entire room (or rooms) in which furniture is to be installed.  See id. ¶ 8.  The process involved extensive interaction and home visits, among other things.  See id.  The typical training period for a design consultant is a period of 3-6 months.  See id. ¶ 44.  There is a delicate balance of overstaffing or understaffing and that upsetting this delicate balance could upset and harm the business.  See id. ¶ 38.  During the relevant period, there were approximately 6 design consultants, including Plaintiff.  See id. ¶ 42.  As a result, as Ethan Allen has demonstrated, the impact of one of those designers being out was felt significantly in the store.  See id. ¶¶ 38-44.

When Plaintiff requested a job-protected leave of absence, Ethan Allen conducted an analysis of the impact of her absence on the Chadds Ford Design Center, including an assessment of the traffic in the door, and ultimately recommended that Plaintiff's position no longer be held due to several hardships that the business was experiencing in her absence.  See id. ¶¶ 36, 39, 44.  Due to Plaintiff's absence, on September 30, 2019, Ethan Allen concluded that, the fiscal budget was down 6% from the prior year, home call performance was down 2-3% in the first quarter, the be-back ratio was down 3%, and current design staff were taxed to meet their home call schedules and simultaneously cover door traffic.  See Facts ¶ 44; see also EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, effective Oct. 22, 2002, Example B to Undue Hardship Issues, at https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#undue, last visited Nov. 22, 2021 (EEOC Guidelines) ("store

determines that such an arrangement will result in inadequate coverage to serve customers in a timely manner, keep the shelves stocked, and maintain store security. Thus, the employer can show undue hardship based on the significant disruption to its operations and, therefore, can refuse to reduce the employee's hours").

Indeed, this continued financial burden was felt in the Chadds Ford Design Center and net written sales for fiscal year 2020 were significantly down by December 2019 as compared to prior years.  See Facts ¶ 98 (demonstrating that net written sales for FY20 were $188,648 as of December 2019, $102,342 less than FY2019, and $92,654 less than FY2018).  However, after a new design consultant was added to the Chadds Ford team in late December 2019, net written sales for fiscal year 2020 significantly increased in January and February 2020, surpassing prior years.  See id. ¶ 99.  As a result of the foregoing, Ethan Allen has established that continuing to hold Plaintiff's position open created an undue hardship for the Chadds Ford Design Center and, therefore, Ethan Allen is entitled to summary judgment on Plaintiff's claims of disability discrimination.  See, e.g., Walton, 168 F.3d at 670 (affirming the district court's ruling, finding that the plaintiff's requested accommodation—continued leave—would have created an undue burden on the employer).

Moreover, because Plaintiff has set forth no evidence of discrimination, this business decision and analysis set forth by Ethan Allen should be accepted by this Honorable Court.  See Chapman v. UPCM Health Sys., 516 F. Supp. 2d 506, 527 (W.D. Pa. 2007) ("The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination.") (citing Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992)).

For the foregoing reasons, Ethan Allen is entitled to summary judgment as to Plaintiff's claims under the ADA and PHRA.

> 2. *Plaintiff Has Failed to Establish a <u>Prima Facie</u> Case of Age Discrimination Under the ADEA or the PHRA*

Plaintiff has failed to set forth facts to demonstrate that the termination of her employment was "intentional and purposeful discrimination" based on Plaintiff's age. <u>Anderson v. Wachovia Mortg. Corp.</u>, 609 F. Supp. 2d 360, 367 (D. Del. 2009) (<u>citing</u> <u>Gen. Bldg. Contractors Ass'n, Inc. v. Pa.</u>, 458 U.S. 375, 390 (1982)). In cases brought under the ADEA and PHRA, the plaintiff's age must have actually played a role in the employer's decision-making process <u>and</u> had a determinative influence on the outcome of that process. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000); <u>Monaco v. Am. Gen. Assur. Co.</u>, 359 F.3d 296, 299-300 (3d Cir. 2004). Moreover, liability under the ADEA and PHRA depends on whether age "actually motivated the employer's decision." <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993). Indeed, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision," and, therefore, "the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 176-80 (2009) (citing cases); <u>Bailey</u>, 2002 WL 1397476, at *10 (explaining that a plaintiff must demonstrate that the employment decision was "the result of intentional discrimination based on [her] age"). Ultimately, it is Plaintiff's burden to prove that age "'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" <u>DeMaio v. Bed, Bath & Beyond of King of Prussia, Inc.</u>, No. 03-5957, 2005 WL 174842, at *3 (E.D. Pa. Jan. 25, 2005) (citing <u>Reeves</u>, 530 U.S. at 141).

FP 42100505.11

To establish a <u>prima facie</u> case of age discrimination Plaintiff must show:  (1) that the plaintiff is forty years of age or older; (2) that the defendant took an adverse employment action against the plaintiff; (3) that the plaintiff was qualified for the position in question; and (4) that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.  <u>Smith v. City of Allentown</u>, 589 F.3d 684, 689-90 (3d Cir. 2009).  Critically, however, Plaintiff cannot satisfy the fourth prong of her <u>prima facie</u> case simply by pointing to the fact that the individual hired to replace her was younger than her.  <u>See</u> <u>Thimons</u>, 254 F. App'x at 899 (affirming District Court's decision to grant summary judgment on fourth prong of ADEA claim, concluding that "[a]lthough [plaintiff] was replaced by a younger employee, [plaintiff] presents no evidence that age played any part in his firing."); <u>Sarullo v. U.S.P.S.</u>, 352 F.3d 789, 799 (3d Cir. 2003) (maintaining that a <u>prima facie</u> claim of age discrimination is not established by merely pointing to the hiring of younger employees).

Plaintiff fails to offer ***any*** evidence "that age played any part in [her] firing."  Indeed, the record is clear that Ms. Savino and Ms. Ramey were unaware of Plaintiff's exact age, and numerous individuals older than Plaintiff remained employed as Design Consultants at the Ethan Allen Design Center.  <u>See</u> Facts ¶¶ 114, 122-23.  Ultimately, Plaintiff alleges that she was discriminated against on the basis of age, but she offers no proof in support of this sweeping allegation.  <u>See</u> <u>Vasbinder v. Shineski</u>, No. 09-1239, 2011 WL 1789989, at *8 (W.D. Pa. May 10, 2011) ("Simply because Plaintiff says [s]he was discriminated against, however, does not make it so.") (internal citation omitted).  Indeed, Plaintiff herself does not believe that her termination was related to her age; she indicated her (unsubstantiated) belief that she was treated differently because she took a medical leave, not because of her age.  <u>See</u> Facts ¶¶ 67-70.

Because Plaintiff has not presented circumstances that create an inference of illegal discrimination, she has failed to establish her prima facie case of age discrimination. As such, Defendants are entitled to judgment in their favor as to Plaintiff's claims for age discrimination.

      3.     *Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation Under the ADEA, the ADA, the PHRA, or the FMLA*

All of Plaintiff's alleged retaliation claims are based on the same set of facts and, therefore, should be dismissed by the Court in toto because Plaintiff cannot establish that Defendant retaliated against Plaintiff in violation of any law. To state a prima facie case of retaliation, Plaintiff must demonstrate that (1) she engaged in a protected activity; (2) defendant reacted adversely; and (3) there was a causal link between the protected activity and the adverse action. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001). Here, Plaintiff cannot establish the first and third elements and, therefore, fails to state a prima facie case of retaliation.

      a.     Plaintiff Did Not Engage In Protected Activity.

"A complaint about discrimination is only protected activity if a 'reasonable person' could believe that 'the incident[s] complained about constituted unlawful discrimination.'" Dykes v. Marco Group, Inc., 222 F. Supp. 3d 418, 431 (E.D. Pa. 2016) (quoting Theriault v. Dollar Gen., 336 F. App'x 172, 174 (3d Cir. 2009)). In other words, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." Theriault, 336 F. App'x at 174.

In her deposition, Plaintiff unambiguously testified that she does not remember complaining to anyone at Ethan Allen about discrimination, harassment, or retaliation.

See Facts ¶ 109.  Plaintiff also testified that she did not report any purported harassment or

discrimination that she felt at Ethan Allen to the corporate governance hotline at any time.  See

id. ¶ 110.

To the extent Plaintiff now attempts to argue that her November 7, 2019 e-mail to Mr.

Golinski constituted protected activity, such an argument fails as a matter of law.  See id. ¶ 66.

First, Plaintiff does not mention her age *anywhere* in the November 7, 2019 email.  See id.  As

such, there can be no argument that Plaintiff engaged in protected activity under the ADEA, and

Defendants are entitled to summary judgment on that claim.  See id. ¶¶ 66-67, 69.

Second, the November 7, 2019 e-mail also does not constitute a complaint of disability-

based discrimination or harassment because it does not set forth any disparate treatment that she

was experiencing as a result of her disability or requests for accommodation.  See id. ¶¶ 68-70.

In her November 7, 2019 e-mail, Plaintiff states in a conclusory fashion:  "I am disappointed

about how I have been treated by the company since my return and it feels like I am being

treated differently because of my leave and the request I made for accommodation."  See id.

¶ 66.

Plaintiff's conclusory statement that she was being treated "differently" because of her

leave and request for an accommodation fails as a matter of law because it is not supported with

any facts or details to explain how the alleged disparate treatment was in fact disparate or

connected to her purported leave or requests for accommodation.  See Veal v. Am. Hearing Aid

Assocs., Inc., No. 17-1738, 2018 WL 3634159, at *4 (E.D. Pa. July 30, 2018) ("When asked by

management to explain how her supervisor was discriminating against her, the plaintiff stated

only that she was treated 'differently,' but could not provide details or facts to explain the

alleged disparate treatment.'  The court held that the plaintiff had not made out a prima facie case

of retaliation because her 'complaints were not specifically tied to any discriminatory practices[.]'").

Because Plaintiff did not engage in protected activity, Ethan Allen is entitled to summary judgment on her retaliation claims under the ADA, ADEA, and PHRA.

b. Plaintiff Has Not Produced Evidence of a Causal Link Between an Allegedly Protected Activity and an Adverse Employment Decision.

Even if Plaintiff could demonstrate that she complained of discrimination and/or harassment, the record does not suggest any causal connection between Plaintiff's November 7, 2019 e-mail and the termination of Plaintiff's employment.  See Conoshenti, 364 F.3d at 147 (affirming summary judgment in the employer's favor where the record did not support a finding of causation).  To prove that the allegedly adverse action was a result of the protected activity, Plaintiff must produce evidence of a causal link between engagement in the protected activity and an adverse employment decision.  Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991). "[A] causal connection may be shown by (1) an unusually *suggestive temporal proximity* between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism *coupled with timing* to establish a causal link."  Gera v. Cnty. of Schuylkill, 617 F. App'x 144, 147 (3d Cir. 2015) (emphasis added); Beese v. Meridian Health Sys., Inc., 629 F. App'x 218, 222 (3d Cir. 2015) (finding no pattern of antagonism even when an employee was terminated immediately upon returning from FMLA leave and alleged that his supervisor made a comment that there was always something happening with the employee).

To the extent Plaintiff now claims that the November 7 e-mail is "protected activity," it occurred two months before the termination of Plaintiff's employment and *after* Plaintiff was informed that it was not possible, due to the needs of the business, for Ethan Allen to hold

Plaintiff's position open until her short term disability benefits ran out.   <u>See, e.g., PHA Police Dep't</u>, 380 F.3d at 760 (holding that two months between protected activity and adverse employment action were not unduly suggestive).

Because the timing is insufficient to establish her retaliation claim as a matter of law, Plaintiff must produce additional evidence of a causal link between her protected activity and the termination of her employment.  <u>See Gera</u>, 617 F. App'x at 147.  <u>See also Quiroga</u>, 934 F.2d at 501.  Plaintiff has failed to produce such evidence.  <u>See Brock v. Int'l Union of Operating Eng'rs, Local 542 Dist. 1</u>, 140 F. Supp. 3d 432, 439–40 (E.D. Pa. 2015) ("Plaintiffs allege they complained about discriminatory actions and as a result received less work assignments. Plaintiffs baldly assert they 'continually complained to the Defendant of their discriminatory practices and no action was taken to correct this discrimination.  Instead, the Defendant retaliated against the Plaintiffs by reducing the number of work days thus reducing wages and hours as demonstrated above.'  ***Again, these bald averments are not supported by factual evidence.*** Plaintiffs cite no testimony or other documentary evidence of continual complaints of discriminatory practices . . . There is no evidence from which a jury could infer Defendants retaliated against Plaintiffs in response to their complaints of discriminatory practices.").  In order to show that a defendant engaged in a pattern of antagonism, a plaintiff must show that the antagonistic or hostile treatment occurred during the gap of time between the protected activity and the adverse action.  <u>See LeBlanc v. Hill Sch.</u>, No. 14-1674, 2015 WL 144135, at *20 (E.D. Pa. Jan. 12, 2015) (finding that antagonism must occur after protected activity to satisfy this burden).

Far from a pattern of antagonism, Kate Savino and David Golinski met promptly with Plaintiff to ensure that all of her concerns were addressed, and that her accommodations were

being met.  See Facts ¶¶ 71-83.  Further, Plaintiff was provided the benefit of a non-recoverable period following her leave of absence.  See Facts ¶¶ 61-21.

To the extent Plaintiff is making the "circular argument that [Defendants] denied [her] request [for a third job-protected leave of absence] in retaliation for her asking [for a third job-protected leave of absence]," such a claim also fails as a matter of law.  Williams v. PHA, 230 F. Supp. 2d 631, 639 (E.D. Pa. 2002), aff'd in part, rev'd in part, on other grounds, 380 F.3d 751 (3d Cir. 2004).  See also Garner, 63 F. Supp. 3d at 500 (rejecting plaintiff's retaliation claim as "nothing more than a repackaged statement" of his failure to accommodate claim); Semcheski v. Cunningham Lindsey U.S., Inc., No. 3:16cv1592, 2018 WL 3417219, at * (M.D. Pa. July 13, 2018) (granting summary judgment in favor of the defendant on plaintiff's retaliation claim where the "claim is stated as a retaliation claim in form . . . it is in substance just a reiteration of his failure to accommodate claim").  Plaintiff's retaliation claim here, like in Garner and Semcheski, is simply a repackaging of her insufficient failure to accommodate claim and, therefore, it cannot support a retaliation claim under the ADA.

As a result of the foregoing, Plaintiff has failed to establish a prima facie case of *any* retaliation claim under the McDonnell Douglas framework and, therefore, Defendants are entitled to judgment in their favor as to Plaintiff's retaliation claims under the ADA, the ADEA, and the PHRA.

      c.     Plaintiff fails to establish a prima facie case of retaliation based on her theory that she was retaliated against for taking FMLA leave.

In order to establish a prima facie case of retaliation under the FMLA, Plaintiff must show:  (1) she took FMLA leave; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to her FMLA leave.  Chapman, 516 F. Supp. 2d at 523.

31

Plaintiff again cannot establish the third prong of her prima facie case of retaliation because there is no evidence to suggest that Plaintiff's termination was related to her FMLA leave.  "While the timing of the relevant disciplinary actions and termination are relevant factors in assessing causation, timing alone is not usually sufficient to establish the causation prong in a claim for retaliation."  Brown v. DB Sales, Inc., No. 04-1512, 2005 WL 3591533, at *9 (E.D. Pa. Dec. 29, 2005).  According to the Third Circuit, temporal proximities as short as three weeks are insufficient to show causation.  Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).

Here, Plaintiff's last approved FMLA leave period expired almost 15 weeks prior to the termination of her employment.  See Facts ¶¶ 25, 29, 89, 102, 105.  Plaintiff cannot rely on the temporal proximity of these events to establish causation.  See LeBoon v. Lancaster C.C. Ass'n, 503 F.3d 217, 233 (3d. Cir. 2007) ("a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment").

Moreover, when Plaintiff's entitlement to FMLA leave expired at the end of September 2019, Ethan Allen took all possible steps to provide Plaintiff with opportunities to return to work and additional accommodations (including extended additional medical leave) over the next 15 weeks.  See Facts ¶¶ 32, 45-46, 49, 50-59, 62, 85, 89.  Logically, if Ethan Allen arbitrarily wanted to deny or discourage Plaintiff or any employee from taking FMLA leave, surely it would not suggest that she make use of FMLA leave, provide her with the appropriate forms, permit her to take FMLA leave, *and* grant her the accommodation of additional ongoing leave even after her FMLA allotment was exhausted.  See generally Facts.  Ethan Allen did not fail to accommodate Plaintiff in retaliation for her request for FMLA leave.  See, e.g., id.  Instead, the

undisputed facts demonstrate clearly that Ethan Allen went to great lengths to ensure that Plaintiff was reasonably accommodated, and the *only* reason Plaintiff was not given a third job-protected leave of absence is that it was an unreasonable accommodation that created an undue burden.  <u>See</u> Section II.B.1.c.iv.  Thus, Plaintiff has failed to set forth any other evidence of causal connection between Plaintiff's FMLA use and the termination of her employment.  <u>See</u> <u>Conoshenti</u>, 364 F.3d at 147 (affirming summary judgment in the employer's favor where the record did not support a finding of causation); <u>cf.</u> <u>Coker v. McFaul</u>, 247 F. App'x 609, 620 (6th Cir. 2007) ("There is no regulatory or statutory authority to impose upon an employer the obligation to provide FML in excess of the 12–week period under these circumstances.  Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.") (internal quotations and citations omitted).

The fact that Plaintiff had taken an FMLA-approved leave had nothing to do with the termination of her employment, and Plaintiff has been unable to demonstrate otherwise. Accordingly, Plaintiff has not established the requisite causal connection between her FMLA use or request for FMLA leave and the termination of her employment and Ethan Allen is entitled to judgment in its favor as to Plaintiff's FMLA retaliation claim.

### C.   Ethan Allen Has Established a Well-Documented, Legitimate, Non-Retaliatory, and Non-Discriminatory Reason for Filling Plaintiff's Position and Terminating Plaintiff's Employment

Even if Plaintiff could meet her burden of establishing a <u>prima</u> <u>facie</u> case of discrimination or retaliation under the ADA, the ADEA, the PHRA, or the FMLA which she cannot, Plaintiff's claims still fail because, under the second prong of the <u>McDonnell Douglas</u> framework, Ethan Allen can "articulate some legitimate, nondiscriminatory reason for the

employee's [treatment]."  McDonnell Douglas, 411 U.S. at 802.  "The employer need not prove

that the tendered reason actually motivated its behavior."  Fuentes v. Perskie, 32 F.3d 759, 763

(3d Cir. 1994).  Rather, the employer satisfies its "relatively light burden" by "introducing

evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory

reason for the unfavorable employment decision."  Fuentes, 32 F.3d at 763.

The undisputed evidence demonstrates that Ethan Allen engaged in an extensive

interactive process in order to try to accommodate Plaintiff and ***Plaintiff***, not Defendants, failed

to engage in the interactive process in good faith.  See Facts ¶¶ 33-34, 45-59, 85-87, 89, 91-93.

The undisputed evidence further demonstrates that Plaintiff's job was filled because Ethan Allen

had a business need in the Chadds Ford Design Center, unrelated to any protected category or

protected conduct.  See id. ¶¶ 35-44, 50, 90, 98.  As set forth in detail above, Ethan Allen filled

Plaintiff's position because keeping the position open was unreasonable as a matter of law, and

caused undue hardship for Ethan Allen, as outlined in Ms. Savino's September 30, 2019 letter.

See id. ¶ 90; see also Section II.B.1.c.iv, supra.

> ### D. Plaintiff is Unable to Put Forth Any Evidence to Demonstrate that Ethan Allen's Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Filling Plaintiff's Position and Terminating Plaintiff's Employment Were Pretextual

Even if Plaintiff could establish a prima facie case under the McDonnell Douglas

analysis, with she cannot, she would then have the burden of proving that Defendants'

legitimate, non-discriminatory and non-retaliatory reason for filling Plaintiff's position was a

pretext for discrimination or retaliation.  In order to demonstrate that Defendant's proffered

justification for terminating Plaintiff's employment was merely pretextual, "[t]he Plaintiff must

point to some evidence, direct or circumstantial, from which a factfinder could reasonably either

(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

Plaintiff cannot challenge Defendants' legitimate, nondiscriminatory reasons for their employment decision by simply arguing that the decision "was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Jones, 198 F.3d at 413. See also Brewer v. Quaker State Oil Rf. Corp., 72 F.3d 326, 332 (3d Cir. 1995) ("**We do not sit as a super-personnel department that reexamines an entity's business decisions**.") (internal citation omitted) (emphasis added)). Rather, to rebut Defendants' stated reason for termination, Plaintiff must show that "she was the victim of intentional [retaliation] by showing that the employer's proffered explanation is unworthy of credence." Reeves, 530 U.S. at 143. In this particular context, "[f]ederal courts have demonstrated measured temperance when opining upon an employer's selection of a particular accommodation, recognizing full well that it is not the judiciary's place to substitute its own judgment for that of a business manager whose day-to-day closeness with his firm's operations commands a certain deference." Moore, 142 F. Supp. 3d at 341. Plaintiff "cannot survive by relying on unsupported assertions, conclusory allegations, [or] mere suspicions." Fralin v. C & D Sec., Inc., No. 06-2421, 2008 WL 2345957, at *2 (E.D. Pa. June 6, 2008) (quoting Borough of W. Chester, 891 F.2d at 460).

Further, Plaintiff must not only show that the employer's reasons are not the true reasons for their action, but she must also demonstrate that Defendants had the intent to discriminate or retaliate. Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1070 (3d Cir. 1996). In fact, even where the employee has proven "the existence of a crusade to terminate" that

employee, she must also demonstrate that the crusade was motivated by discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

Far from an "existence of a crusade to terminate," Ethan Allen went out of its way to accommodate the reasonable requests for accommodation that Plaintiff was requesting and provide her with more leeway and opportunities than other employees.  See, e.g., Section II.B.1.c., d., supra.  Moreover, Plaintiff has failed to offer any evidence that would demonstrate that the legitimate reason for the termination of her employment should be disbelieved.  See, e.g., Jones, 198 F.3d at 412–13 ("At trial, the plaintiff must convince the finder of fact both that the reason was false, and that discrimination was the real reason."); Bailey, 2002 WL 1397476, at *11.  Whether Plaintiff agrees with an employer's business decision "is irrelevant for the purposes of his claim of employment discrimination."  Thompson v. Sears, Roebuck & Co., No. 04-5342, 2006 WL 3144129, at *6 (E.D. Pa. Oct. 30, 2006).  Arguments completely devoid of reference or evidence linking their claims to a protected class have been explicitly rejected by this Court.  Cf. Frost v. PetSmart, Inc., No. 05-6759, 2007 WL 602990, at *5 (E.D. Pa. Feb. 26, 2007) ("nothing in the record links [supervisor's] alleged animus to any illegal discrimination, let alone to [plaintiff's] age").  Simply because Plaintiff draws a conclusion in a complaint that "he was discriminated against, however, does not make it so."  Vasbinder, 2011 WL 1789989, at *8 (internal citation omitted).  Likewise, the mere fact of being in a protected category does not constitute discriminatory animus.  Cf. Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F. Supp.  667, 671 (E.D. Pa. 1996) ("[m]ere knowledge of an employee's age does not constitute discriminatory animus." (citing Armbruster v. Unisys Corp., 32 F.3d 768, 780-82 (3d Cir. 1994)).

All of Plaintiff's claims are based on the (legally meritless), unsupported and self-serving assertion that it was not a problem for Ethan Allen to hold open her position for a third leave of absence.  As set forth in detail above, Ethan Allen went out of its way to accommodate Plaintiff, attempt to return her to work, and conduct a detailed analysis of the needs of the business to determine whether a continued leave of absence was a reasonable accommodation, or if it created an undue burden.  See Facts ¶¶ 35-49, 50-51.

Under the third prong of the McDonnell Douglas framework, Plaintiff has failed to establish the existence of any evidence that would suggest that Ethan Allen's reasoning regarding the termination of Plaintiff's employment and the need to fill Plaintiff's position was fabricated for discriminatory purposes or that Ethan Allen intended to retaliate against Plaintiff in any way.  Cf. Cartagena v. Temple Univ. Hosp., Inc., 389 F. Supp. 3d 341, 350 (3d Cir. 2019) ("There is nothing negative or untoward in [supervisor's] consideration of the length of Plaintiff's leave and her continued inability to perform the essential functions of her job in determining whether her employment should be terminated.") (citing Conshenti, supra).

As a result, Plaintiff has failed to meet her burden under McDonnell Douglas and, accordingly, Defendants are entitled to judgment in its favor as to all counts in Plaintiff's Amended Complaint.

**E.      Summary Judgment Should be Granted in Favor of Ethan Allen Because Plaintiff Has Failed to Establish that Ethan Allen Harassed Plaintiff on the Basis of her Age or her Disability**

Although Plaintiff makes a cursory claim that she was subject to "harassment" or "unfair" treatment, she has set forth no evidence sufficient to demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult [*because of her protected status*] that is sufficiently severe or pervasive to alter the conditions of [her] employment and

create an abusive working environment." Culler v. Sec'y of U.S. Veterans Affairs, 507

F. App'x. 246, 250 (3d Cir. 2012);[5] see also Phillips v. SEPTA, No. 16-0986, 2018 WL 827440,

at *5 (E.D. Pa. Feb. 12, 2018) ("To state a hostile work environment claim, '[t]he plaintiff must

subjectively perceive the environment to be hostile or abusive, and conditions must be such that

a reasonable person would have the same perception.' . . . [T]he conduct must be extreme to

amount to a change in the terms and conditions of employment.").  Moreover, Plaintiff has not

set forth any evidence that any alleged conduct created an objectively hostile work environment.

See also Brooks v. CBS Radio, Inc., 342 Fed. App'x 771, 776 (3d Cir. 2009) ("It is not sufficient

for [a plaintiff] to have subjectively perceived the harassment as severe or pervasive, the conduct

in question must also be so severe or pervasive that it creates an objectively hostile work

environment."); PHA, supra, ("rudeness or perceived rudeness by her superiors is insufficient [to

establish a claim for a hostile work environment] and beyond the scope of anti-discrimination

laws"); Thornton v. Temple Univ. Health Sys., Inc., No. CV 17-5419, 2018 WL 585488, at *1

(E.D. Pa. Jan. 29, 2018).  To the contrary, during Plaintiff's brief return to work, Defendants

made every effort to welcome her back, provide reasonable accommodations, and ensure a

smooth transition back to work.  See Facts ¶¶ 71-83; 61-21.

---

[5]     Defendants reserve the right to dispute whether the ADEA or ADA support hostile work
environment claims.  E.g., Johnson v. Philadelphia Hous. Auth., 218 F. Supp. 3d 424, 438 (E.D. Pa. 2016)
("The Third Circuit has not yet decided if the ADEA supports hostile work environment claims.");
Mercer v. Se. Pennsylvania Transit Auth., 26 F. Supp. 3d 432, 443 (E.D. Pa. 2014), aff'd sub nom. Mercer
v. SEPTA, 608 F. App'x 60 (3d Cir. 2015) ("[T]he Third Circuit has not definitively decided whether a
hostile work environment cause of action exists under the ADA[.]").  Regardless, Plaintiff has not
established **any** harassment, and has not established any comments or conducted related to her age or
alleged disability.  As a result, Defendants are entitled to judgment on Plaintiff's harassment claims, to
the extent such claims are cognizable.

To the extent Plaintiff attempts to make out a cause of action for harassment, Ethan Allen is entitled to judgment on such claims as not cognizable or actionable based on the undisputed facts in this case.

**F.  Plaintiff Has Not Established Personal Liability Against Savino and Kalina**

As initial matter, because the underlying claims fail, Plaintiff's claims under an aiding and abetting theory also fail.  See Elmarakaby v. Wyeth Pharms., Inc., No. 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015) (holding that the plaintiff's PHRA aiding and abetting claim cannot survive independently of the primary violation of the PHRA in a motion to dismiss); see also McIlmail v. Pa., 381 F. Supp. 3d 393, 415 (E.D. Pa. 2019) ("For Plaintiff to establish a primary violation of the PHRA he must show an 'unlawful discriminatory practice.' 43 Pa. Stat. Ann. § 955.").

Even if Plaintiff could establish her underlying claims against Ethan Allen, Plaintiff's claim for individual or personal liability against Mr. Kalina and Ms. Savino also fails because Plaintiff cannot demonstrate an aiding and abetting/accomplice liability theory against either of these individual defendants.  "An individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory . . . for [his/her] own direct acts of discrimination or for [his/her] failure to take action to prevent further discrimination by an employee under supervision." See Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).  Here, Plaintiff cannot demonstrate that Ms. Savino or Mr. Kalina – personally – engaged in any discriminatory actions against Plaintiff, or that any discriminatory actions were reported to Ms. Savino or Mr. Kalina, such that they failed to take action to prevent further discrimination.

As to Defendant Kalina,[6] when asked during Plaintiff's deposition why she decided to sue him, Plaintiff responded:  "Because he's the human resource and he knew this was wrong."  See Facts ¶ 116.  However, although Plaintiff claims to know what Mr. Kalina "knew to be wrong," she admitted that she has only ever interacted with Mr. Kalina in writing and that she does not remember ever meeting Mr. Kalina in the past, and if she did, it would have been prior to 2014.[7]  See id. ¶¶ 117-18.  It is undisputed that Mr. Kalina does not believe that Ethan Allen engaged in any discriminatory acts towards Plaintiff.  See id. ¶ 120.  Mr. Kalina believed, during the relevant time period, that Mr. Kalina had neither discriminated against Plaintiff nor retaliated against Plaintiff.  See id. ¶ 121 ("Q.  ***I understand that you believed at the time you received this that you had neither discriminated nor retaliated against her.***") (emphasis added).

As to Defendant Savino, it is undisputed that Ms. Savino was involved in assessing the Chadds Ford Design Center's business needs and ultimately making a recommendation to Ethan Allen to fill the role based on business needs.  See Facts ¶¶ 37, 39, 44.  Plaintiff, however, fails to set forth that such a decision was discriminatory or retaliatory.  Indeed, Ms. Savino's assessment and recommendation was clearly based on the business needs of the Chadds Ford Design Center and was neither a direct act of discrimination or a failure to take action to prevent further discrimination by an employee under supervision.  The record is clear that Ms. Savino worked frequently with Plaintiff during the relevant time period to ensure that she was receiving support.  See Facts ¶¶ 55, 59, 66, 71-83.

---

[6]      Plaintiff's claim for individual or personal liability against Mr. Kalina also fails because Plaintiff has not established – or even alleged – that Mr. Kalina was a supervisor of Plaintiff's.  See Holocheck v. Luzerne Cnty. Head Start, Inc., 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) ("Direct incidents of harassment by non-supervisory co-employees are not covered by § 955(e)."); Kaniuka v. Good Shepherd Home, et al., No. 05–2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug.15, 2006) (same).

[7]      Plaintiff, however, could not have met Mr. Kalina prior to 2014 because Mr. Kalina was not employed with Ethan Allen until October 1, 2018.  See Facts ¶ 137.

FP 42100505.11

For the foregoing reasons, Plaintiff's aiding and abetting claims against Defendants Kalina and Savino fail and summary judgment is appropriate as to Count IV.

### G.  Judgement Should Be Entered relating to Plaintiff's Alleged Damages

*1.   Plaintiff Is Not Permitted to Recover Punitive Damages*

Should any of Plaintiff's claims survive summary judgment—which they should not— Plaintiff should not be permitted to recover punitive damages under ___**any**___ of the theories that she has raised in the Amended Complaint.

As an initial matter, the ADEA, the FMLA, and the PHRA do not provide for punitive damages.  See Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 624 (M.D. Pa. 2000) ("While [Plaintiff] may seek liquidated damages under the ADEA, there is no dispute that he is not entitled to . . . punitive damages under the federal statute. . . . Accordingly, [Defendant] is entitled to an order precluding recovery of such damages . . . ."); Middlebrooks v. Teva Pharms. USA, Inc., No. 17-412, 2019 WL 438092, *20 (E.D. Pa. Feb. 4, 2019) (recognizing that there is no federal precedent in our jurisdiction permitting punitive damages for any type of ADEA claim, including ADEA retaliation claims); Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 483 (W.D. Pa. 2008) ("The FMLA has no provision for punitive damages.") (citing 29 U.S.C. § 2617); Mangan v. Commw. Med. Coll., No. 11-2277, 2012 WL 2018270, *3 (M.D. Pa. June 5, 2012); Snyder v. Bazargani, 241 Fed. Appx. 20, 23, n. 1 (3d Cir. 2007) (adopting the state court's holding that punitive damages are not available under the PHRA).

Further, Plaintiff is not entitled to punitive damages under the ADA where, as is the case here, Defendants made an effort to reasonably accommodate Plaintiff.[8]  See 42 U.S.C.

---

[8]      Plaintiff is also not entitled to compensatory damages for her ADA retaliation claim.  See McFadden v. Biomedical Sys. Corp., No. 13-4487, 2014 WL 80717, *6 (E.D. Pa. Jan. 9, 2014) (Savage, J.) ("[P]unitive and compensatory damages are not available remedies where a plaintiff lodges an ADA retaliation claim."); Santana v. Lehigh Valley Hosp. & Health Network, No. 05- 01496, 2005 WL

§ 1981a(a)(3) (punitive damages are not available under the ADA in reasonable accommodation cases where the employer has made a good faith, even if ultimately unsuccessful, effort to reasonably accommodate the employee with alleged disabilities in consultation with the employee seeking the accommodation); Fabian v. St. Mary's Med. Ctr., No. 16-4741, 2017 WL 3494219, *6 (E.D. Pa. Aug. 11, 2017) (explaining that punitive damages are not available under the anti-retaliation provisions of the ADA) (citing Slayton v. Sneaker Villa, Inc., No. 15-0074, 2017 WL 1048360, *14 (E.D. Pa. Mar. 20, 2017) (granting defendant's motion to dismiss plaintiff's request for punitive damages in connection with her ADA retaliation claim)).

Therefore, Plaintiff is not entitled to punitive damages relating to any of her claims and in the event that summary judgment is not granted as to Plaintiff's entire Amended Complaint, Defendants seek summary judgment as to her claims for punitive damages under all of her claims.

### 2.    *The Court Should Strike Plaintiff's Demand for a Jury Trial*

Additionally, should Plaintiff's ADA retaliation claim survive summary judgment—which it should not—Ethan Allen requests that the Court strike Plaintiff's request for a jury trial. The Third Circuit has not spoken definitively on this issue, but courts within this Circuit have adopted the analysis as set forth in Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961 (7th Cir. 2004). See, e.g., Kozempel v. Grand View Hosp., No. 10-6839, 2011 WL 1196851, *3 (E.D. Pa. Mar. 30, 2011); Baker v. PPL Corp., No. 09-0428, 2010 WL 419417, *7-*8 (W.D. Pa. Jan. 29, 2010); Shellenberger v. Summit Bancorp., Inc., No. 99-5001, 2006 WL 1531792, *2 (E.D. Pa. June 2, 2006); Santana, 2005 WL 1914654, at *2; Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311, 331 (W.D. Pa. 2004).

---

1941654, *2 (E.D. Pa. Aug. 11, 2005) ("[C]ompensatory and punitive damages are not available to the plaintiff for her ADA retaliation claim.").

As the ADA anti-retaliation provision does not envision compensatory or punitive damages, Plaintiff's sole remedy for her retaliation claim is equitable.  See Sabbrese, 320 F. Supp. 2d at 332.  Plaintiff, therefore, is not entitled to a jury trial on this claim.  Id.

> 3.     *Plaintiff's Failure To Accept An Offer Of Employment And Acknowledgment That Her Employment With Ethan Allen Would Have Been Terminated Precludes Plaintiff from Seeking Back Pay or Front Pay*

In the event that Plaintiff's claims survive summary judgment, Ethan Allen is entitled to judgment in its favor with respect to Plaintiff's claims for front pay and back pay from, at the very latest, April 2, 2020 forward as a result of Plaintiff's failure to mitigate her damages.

A plaintiff who brings claims for front pay and back pay has a duty to mitigate her damages "by using reasonable diligence to obtain substantially equivalent employment."  Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1045 (5th Cir. 1998).  See also Holocheck, 2007 WL 954308, at *13-*18 (granting summary judgment in favor of defendant on plaintiff's front pay claim and noting that plaintiffs must attempt to mitigate their damages under the ADEA and PHRA).  Further, "if the employee has exercised no diligence whatsoever[,] the circumstance of a scarcity of work and the possibility that none would have been found even with the use of diligence is irrelevant."  Holocheck, 2007 WL 954308, at *14.  Thus, where an employee has completely withdrawn from the labor market, the employer need not present evidence that substantially equivalent work was available in order to demonstrate the plaintiff failed to mitigate his damages.  See id.

The record is clear that Plaintiff failed to mitigate her damages beginning in March and April of 2020, and that Plaintiff withdrew from the labor market at that time.  First, it is undisputed that Plaintiff received a full-time job offer from Pala Brothers in March or April 2020, but did not take the job.  See Facts ¶ 130.  Second, it is undisputed that Plaintiff received a

43

job offer from Johnny Jonosik around April 2020, but never followed up with the opportunity. See id. at ¶ 132.  Third, Plaintiff admitted that she completely ***stopped*** her job search efforts in or around March or April 2020 and that she did not start looking for a job again until 2021.  See id. at ¶¶ 133-34.   Notwithstanding Plaintiff's own failure to mitigate her damages, the record has also clearly established that Plaintiff would have been laid off from employment with Ethan Allen on April 2, 2020, had she still been employed on that date.  See id. at ¶¶ 158-65.

Accordingly, at the very latest, Plaintiff is not entitled to any of her lost earnings after April 2, 2020 as a matter of law.

### H.   Plaintiff Has Failed to Establish that the Court May Exercise Personal Jurisdiction Over Defendant Kalina

Plaintiff has not established that Kalina had sufficient contacts with Pennsylvania to establish personal jurisdiction.   Specifically, Kalina is a resident of the state of Connecticut and works at Ethan Allen's corporate headquarters in Danbury, Connecticut.  See id. at ¶ 135. Moreover, Kalina does not physically perform any work within the Commonwealth of Pennsylvania.  See id. at ¶ 136.  The only interaction Kalina may have had with Plaintiff was in the context of his employment with Ethan Allen, and the communications Kalina is alleged to have sent to Plaintiff were directed to Delaware, not Pennsylvania.  See id. at ¶ 137-138.  As a result, Kalina has ***no contact*** with the forum and should be dismissed from this suit with prejudice.

Kalina raised this argument in a motion brought under Federal Rule of Civil Procedure 12(b)(6).  See ECF No. 22.  In its Memorandum Opinion, this Honorable Court recognized that the burden on Plaintiff is greater at the summary judgment stage than it was at the 12(b)(6) stage. ECF No. 27 at p. 7, n. 36.  Because the jurisdictional issue remains in dispute and Plaintiff has not met her burden of showing that personal jurisdiction exists, Defendants ask this Honorable

44

Court to revisit this issue at this stage.  See Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007) ("If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists.").

To fulfill her burden to demonstrate personal jurisdiction over Kalina, a plaintiff must show "'with reasonable particularity' enough contact between the defendant and the form to support a prima facie case in favor of the exercise of personal jurisdiction by the forum state." Issaschar v. ELI Am. Friends of Israel Ass'n for Child Prot., Inc., No. 13-2415, 2014 WL 716986, *3 (E.D. Pa. Feb. 25, 2014) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1986)).  Plaintiff has failed to do so.

A federal court engages in a two-step analysis to determine whether it may exercise personal jurisdiction over a nonresident defendant.  Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc., No. 04-1060, 2004 WL 2384991, *2 (E.D. Pa. Oct. 22, 2004).  "First, the court must ascertain whether the long-arm statute of the state in which it sits authorizes jurisdiction." Id. Second, if the Court concludes that jurisdiction is permissible under the state's long-arm statute, it must then determine whether exercising personal jurisdiction over the nonresident defendant comports with the Due Process Clause of the United States Constitution.  D&S Screen Fund II v. Ferrari, 174 F. Supp. 2d 343, 346 (E.D. Pa. 2001).  "In Pennsylvania, the two-step inquiry collapses into a single step because the reach of Pennsylvania's long-arm statute is coextensive with the constitutional limits of due process."  Creative Waste Mgmt., Inc., 2004 WL 2384991, at *2 (citing 42 Pa. Const. Ann. § 5322 (2004); Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (1992) (finding that Pennsylvania's long-arm statute authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment")).  The Due

Process Clause limits the reach of Pennsylvania's long-arm jurisdiction to non-residents having sufficient minimum contacts with Pennsylvania "such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

Consistent with traditional notions of fair play and substantial justice, a defendant may not constitutionally be required to defend suit in a jurisdiction unless "he should reasonably anticipate being haled into court there." Burger King Corp., 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The test for reasonable anticipation is one of fairness, and a defendant cannot "reasonably anticipate being haled into court" in a jurisdiction unless "there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (emphasis added).

Specific jurisdiction[9] only exists when the defendant's conduct allegedly gives rise to the cause of action and "create[s] a substantial connection with the forum State." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014). Thus, "the plaintiff must prove: (1) the defendant has purposefully directed his activities at the forum; (2) the plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." Marten, 499 F.3d at 296; O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). Although the latter standard is discretionary, the Third Circuit has "generally chosen to engage in [it]." Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 201 (3d Cir. 1998).

---

[9]    This Honorable Court has already determined that no general jurisdiction exists over Kalina under Pennsylvania's long arm statute. See ECF No. 27 at p. 9 ("Kalina does not live in Pennsylvania, was not served with process here, and has not consented to jurisdiction. Therefore, there is no basis for the exercise of general jurisdiction under Pennsylvania's long-arm statute.").

Alternatively, a plaintiff alleging an intentional tort can establish personal jurisdiction in the forum state by satisfying the "effects test" established in Calder v. Jones, 465 U.S. 783 (1984), under which personal jurisdiction in the forum state is appropriate if: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.   IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998).

The third prong of the Calder test must be met before the Court considers the other two elements.   Marten, 499 F.3d at 297.   While the Calder test provides an alternative way to establish personal jurisdiction over a defendant, it does not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis so that a plaintiff could always sue in his or her home state."   IMO Indus., Inc., 155 F.3d at 265.   The Calder test "requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum state . . .in the typical case, this will require some type of entry into the forum state by the defendant."   Id. at 265.   Here, Plaintiff has not established that Kalina expressly aimed his conduct at Pennsylvania, but rather that he was providing informational communications to another employee *in Delaware* in connection with his capacity as an Ethan Allen employee and, therefore, the Court need not consider the other two elements of the test.   See Merical, infra.   Even so, there is no evidence that Kalina committed an intentional tort

"Jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."   Merical v. Valor Healthcare, Inc., No. 12-1681, 2013 WL 5408986, *2 (W.D. Pa. Sep. 25, 2013) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781

(1984)); see also Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000).  For example, a corporate officer is not amenable to personal jurisdiction in a state simply because their actions foreseeably impacted employees there.  Keuch v. Teva Pharm. USA, Inc., No. 19-5488, 2020 WL 6870602, *4 (E.D. Pa. Nov. 23, 2020).  Similarly, a human resources professional is not subject to personal jurisdiction in a state merely because they have interacted with employees there.  See Merical, 2013 WL 5408986 at *5.

In Merical, the plaintiff alleged that two individual defendants – an out-of-state human resources director and her out-of-state supervisor – aided and abetted her employer in violation of the PHRA by allegedly being "well aware of the unlawful harassment and discrimination based upon gender, age, race, and disability . . . and [by doing] nothing to stop [it], and in fact, they even perpetuated it and retaliated against Plaintiff by supporting and recommending [her] discharge."  Id. at *2.[10]  The Court explained that all of the interactions between the out-of-state human resources director were taken in his professional capacity, were typical interactions that a human resources director would have with employees, lacked any evidence of animosity and, therefore, Plaintiff had "not met her burden to establish that this Court has personal jurisdiction over the [human resources director]."  Merical, 2013 WL 5408986, at *5–6 (dismissing both individual defendants for lack of personal jurisdiction); Simpson v. Lifespring, Inc., 572 F. Supp. 1251, 1253 (E.D. Pa. 1983) (finding that to subject the defendant to personal jurisdiction as a result of actions taken in his corporate capacity would "force him to defend himself in every forum where [the corporation] conducts its operations" and would "distort[ ] the due process

---

[10]    See also Merical, 2013 WL 5408986 at *5 (finding that the plaintiff failed to address whether the individual defendants expressly aimed their conduct at Pennsylvania as is required to meet the third element of the Calder effects test, even where there were some contacts with Pennsylvania – entirely in their roles with the defendant company).

limits of personal jurisdiction"); <u>Bangura v. Penrose Mgmt. Co.</u>, 2010 WL 2539419, at *3 (D.N.J. June 15, 2010) ("the necessity of communicating with an employee who happens to work in [the forum state] cannot be said to show that the supervisors purposefully directed their activities at [the forum state])).

Here, the Court need not even engage in as extensive analysis as in <u>Merical</u> because there is no evidence that Kalina directed ***any*** contacts to Pennsylvania, and it is clear that Kalina did not believe any discrimination, harassment, or retaliation of Plaintiff occurred.  On the record before the Court, there are only two letters that Mr. Kalina sent to Plaintiff, both of which are addressed to her at her home in Wilmington, Delaware.  <u>See id.</u> ¶¶ 50, 89, 137.  Even if Plaintiff resided in Pennsylvania, Plaintiff's allegations against Kalina rest entirely on his assertions that Kalina sent written correspondence to Plaintiff in his capacity as a corporate employee in the Human Resources department of Ethan Allen.[11]  <u>See id.</u> ¶¶ 116-17, 137.  As a result, Plaintiff has not and cannot establish the first or second elements of specific jurisdiction.

Finally, as demonstrated by the foregoing, even if Plaintiff could satisfy the other requirements of specific personal jurisdiction, the exercise of personal jurisdiction over Kalina here would not be consistent with traditional notions of fair play and substantial justice.  Kalina could not have reasonably anticipated being haled into court in Pennsylvania simply by sending informational contacts in his capacity as an employee of Ethan Allen to an individual in Delaware.  Accordingly, this Honorable Court does not have personal jurisdiction over Defendant Kalina and he should be dismissed from this matter with prejudice for that reason.

---

[11]     <u>See also</u> <u>Isaacs v. Arizona Bd. of Regents</u>, 608 F. App'x 70, 76 (3d Cir. 2015)(although the defendant college recruited athletes and faculty in Pennsylvania, and targeted Pennsylvania high school students through emails and its website and admitted them, "these <u>de</u> <u>minimis</u> contacts" failed to establish personal jurisdiction).

FP 42100505.11

IV.    **CONCLUSION**

As a result of foregoing, Defendants Ethan Allen Retail, Inc., Kate Savino, and Robert

Kalina are entitled to Summary Judgment in their favor with respect to all claims in Plaintiff's

Amended Complaint.

<div align="center" style="text-align:left; margin-left:50%;">

Respectfully submitted,

**FISHER & PHILLIPS LLP**

</div>

Date:  November 26, 2021              _/s/ Christina M. Michael_
                                      Christina M. Michael, Esquire
                                      Deniz Uzel Reilly, Esquire
                                      Two Logan Square
                                      100 N. 18th Street, 12th Floor
                                      Philadelphia, Pennsylvania 19103
                                      Telephone:  (610) 230-2150
                                      Facsimile:  (610) 230-2151
                                      cmichael@fisherphillips.com
                                      dreilly@fisherphillips.com

                                      *Attorneys for Defendants Ethan Allen Retail,*
                                      *Inc., Kate Savino, and Robert Kalina*